PEOPLE *v.* PREVOST.

1. CRIMINAL LAW — WITNESSES—USE OF TESTIMONY TAKEN AT JOHN DOE PROCEEDING.

In a prosecution for murder, the testimony taken at a John Doe proceeding was properly used by the prosecutor to refresh the recollection of hostile or unwilling witnesses.

2. SAME—TRIAL—APPEAL AND ERROR—RIGHT OF DEFENDANT TO TESTIMONY TAKEN AT JOHN DOE PROCEEDING.

Refusal by the trial court to grant permission to defendant's counsel to see and have the use of such testimony during the examination of the witnesses was not reversible error, where an order was later made granting him the right to the possession of it, and the prosecutor offered to permit defendant's counsel to look over his shoulder and inspect the testimony while he was examining the witness, but which offer was refused; the act (Act No. 196, Pub. Acts 1917) providing for said John Doe proceeding making no provision for the taking of testimony stenographically or for its filing.

3. SAME—PRIVILEGE—WAIVER.

That it was brought out by the prosecution during the trial that defendant stood on his privilege under the statute (3 Comp. Laws 1915, § 12552) and did not testify in the John Doe proceeding, nor on his examination after his arrest, nor at the inquest, cannot be said to be prejudicial error, where defendant later took the stand in his own behalf, since the statute is for the benefit of those who do not care to become witnesses in their own behalf, and, by taking the stand, he waived any benefit which he might have been entitled to thereunder. CLARK and MOORE, JJ., dissenting on the ground that by such conduct defendant might be compelled to take the stand to overcome the prejudice engendered thereby.

4. SAME—TRIAL—EFFECT OF ANSWER UNRESPONSIVE TO QUESTION—APPEAL AND ERROR.

Defendant's claim of prejudicial error in the development

On right of indicted person to inspect minutes of grand jury, see note in 27 L. R. A. (N. S.) 558.

of the fact by the prosecutor that deceased's widow claimed her constitutional privilege and refused to testify at the John Doe proceeding, in view of the theory of the prosecution that she was the motive of the murder, cannot be sustained, where said fact was revealed by an answer unresponsive to the question asked, and defendant's counsel made no objection thereto and made no motion to strike it out.

5. SAME—WITNESSES—PRIVILEGE.

But even if it could be said that the answer was responsive to the question, it cannot be said to be error to admit it, since deceased's widow was not a witness nor was she on trial, and, therefore, was not entitled to the protection of the statute.

6. SAME — WITNESSES — CONFLICTING TESTIMONY — CREDIBILITY OF WITNESS.

Where the landlady with whom deceased and defendant roomed at the time of the murder first told the story that defendant came home on that night at 9:30, but later changed her story and said that he came home at 2 o'clock in the morning, and it was developed 'by the defense on cross-examination that she first changed her story in the prosecutor's office, it was competent for the prosecutor, on redirect-examination, to show how she came to go to the prosecutor's office on that occasion, and what was said by her and others bearing on the change in her story, for the purpose of enabling the jury to place the proper credit upon her testimony, and determine which, if either, of her stories was the true one. CLARK and MOORE, JJ., reserving opinion.

7. SAME—TRIAL—ISOLATION OF WITNESSES DURING EXAMINATION—REASONABLENESS.

An order by the trial court prohibiting conversation with witnesses during their examination was within the power of the court to make, was reasonable, and applied to defendant, who was a witness in his own behalf, the same as any other witness.

8. SAME—EVIDENCE—REJECTION—APPEAL AND ERROR.

Where defendant's counsel offered in evidence the record of conviction in another State of a witness for the prosecution, and, on objection by the prosecution, reading of same was postponed by the court, and, although it was later read into the record in the absence of the jury,

it was never read before them, what was done amounted to a rejection, so far as it affected defendant's right of review.

9. SAME—HARMLESS ERROR.

Where two other exhibits tending to establish the same thing were read to the jury its rejection cannot be said to be reversible error. .

10. SAME—TRIAL—CONDUCT OF COUNSEL.

Where defendant while on the stand made an unwarranted attack on the chastity of the prosecutor's wife, he was in no position to complain because the prosecutor denied and resented said imputation in vigorous language.

Error to Macomb; Lamb (Fred S.), J., presiding. Submitted October 14, 1921; reargued June 16, 1922. (Docket No. 181.) Decided July 20, 1922.

Lloyd Prevost was convicted of murder in the first degree, and sentenced to imprisonment for life in the State prison at Jackson. Affirmed.

*Lungerhausen, Weeks & Lungerhausen* (*William T. Hosner* and *James McNamara,* of counsel), for appellant.

*Merlin Wiley,* Attorney General, and *Lynn M. Johnston,* Prosecuting Attorney (*Alexander J. Groesbeck* and *Bert V. Nunneley,* of counsel), for the people.

BIRD, J. Defendant was tried and convicted in the Macomb circuit court for the murder of J. Stanley Brown. The testimony discloses that defendant and J. Stanley Brown were both residents of Mt. Clemens and both were about 25 years of age. Brown was well to do and had no employment. Defendant was poor and was employed making deliveries for the Adams Express Company. Brown's wife and defendant were first cousins. Defendant and Brown were much in each other's company. They were frequently seen about town together. They occasionally motored

together in Brown's car. They often dined together, and for several weeks before the murder they occupied the same room at the Edison hotel. They appeared to be the best of friends. Brown was found dead in his sedan on the morning of December 24, 1919, about 3 miles west of the city of Mt. Clemens. Four bullets had entered his head from the rear. Following this, considerable time was consumed by the police authorities in making investigations. Finally a John Doe proceeding was instituted and considerable testimony taken. This proceeding developed facts which pointed to defendant as the guilty party. He was arrested and on examination was held for trial and later convicted.

1. Serious complaint is made of the use which the prosecutor made of the testimony taken at the John Doe proceeding in the examination of his witnesses. The testimony at the John Doe proceeding was taken stenographically and the prosecutor was in possession of a copy thereof. This testimony was not used as substantive evidence but was used by the prosecutor to refresh the recollection of hostile or unwilling witnesses. Several of the people's witnesses, including members of defendant's family, also friends of defendant, had grown very forgetful since they testified in the John Doe proceeding, and the prosecutor used the John Doe testimony to refresh their recollection. The use made of it was competent for this purpose. *People* v. *O'Neill*, 107 Mich. 556; *People* v. *Palmer*, 105 Mich. 568. See, also, 8 R. C. L. p. 86.

2. Another question is raised in this connection. Defendant's counsel applied for permission to see and have the use of the testimony during the examination of the witnesses. The trial court refused to grant the permission during the examination of the witnesses, but later on an order was made granting defendant's counsel the right to the possession of the same. The

prosecutor offered to permit defendant's counsel to look over his shoulder and inspect the testimony while he was examining the witnesses, but they refused to avail themselves of this offer. Act No. 196 of the Public Acts of 1917, which authorizes the John Doe proceedings, does not provide that the testimony shall be taken stenographically, nor does it provide that minutes of the testimony shall be taken or filed. The John Doe proceeding was in no sense an examination of defendant nor was it a trial. Under these circumstances we do not know under what theory defendant could, as a matter of right, demand inspection of the testimony. The case of *State* v. *Rhoads*, 81 Ohio St. 397 (91 N. E. 186, 27 L. R. A. [N. S.] 558, 18 Ann. Cas. 415), denies defendant was entitled to inspect it, but we need not further discuss this question, as the prosecutor's offer to permit them to examine the testimony over his shoulder, and the court's subsequent order that it be turned over to them, renders it unnecessary. As long as counsel had the benefit of the testimony before the trial closed they are in no position to complain of the court's ruling that they should not have it at a particular time.

3. It appeared during the taking of the testimony of the prosecution on the trial that defendant stood on his privilege and did not testify in the John Doe proceeding, nor on his examination, after the arrest, nor at the inquest. Counsel claim this was an error under 3 Comp. Laws 1915, § 12552. The material part of this statute is:

"*Provided, however,* That a defendant in any criminal case or proceeding shall only at his own request be deemed a competent witness, and his neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect."

Much time has been devoted to this question and many cases cited, but we are not impressed with the

importance of the question, because of the fact that defendant took the stand and testified on the trial in his own behalf. When he did this he waived any benefit which he may have been entitled to under the statute, and was then subject to precisely the same cross-examination as any other witness. *People* v. *Howard*, 73 Mich. 10; *People* v. *Gray*, 135 Mich. 542; *People* v. *Parmelee*, 112 Mich. 296; *People* v. *Escarius*, 124 Mich. 623; *People* v. *Higgins*, 127 Mich. 291; *People* v. *Bryan*, 170 Mich. 683; *People* v. *Danenberg*, 176 Mich. 339; *People* v. *Kimbrough*, 193 Mich. 330.

Upon this question Underhill on Criminal Evidence (2d Ed.), § 68, says:

"The exemption from unfavorable comment is applicable only when the accused wholly refrains from testifying. If he voluntarily goes upon the stand, he waives this exemption, and the State may comment upon his testimony as fully as upon that of any other witness, and may call attention to his silence and demeanor while there, or at the preliminary examination, to his refusal to answer incriminating questions; or to deny prominent and damaging facts of which he must have some personal knowledge," citing *Russell* v. *State*, 77 Neb. 519 (110 N. W. 380, 15 Ann. Cas. 222); *Comstock* v. *State*, 14 Neb. 205 (15 N. W. 355); *Solander* v. *People*, 2 Colo. 48; *State* v. *Anderson*, 89 Mo. 312 (1 S. W. 135); *Cotton* v. *State*, 87 Ala. 103 (6 South. 372); *Lee* v. *State*, 56 Ark. 4 (19 S. W. 16); *State* v. *Walker*, 98 Mo. 95 (9 S. W. 646, 11 S. W. 1133); *State* v. *Tatman*, 59 Iowa, 471 (13 N. W. 632); *State* v. *Ober*, 52 N. H. 459 (13 Am. Rep. 88); *Brashears* v. *State*, 58 Md. 563; *Toops* v. *State*, 92 Ind. 13; *Stover* v. *People*, 56 N. Y. 315; *Commonwealth* v. *Mullen*, 97 Mass. 545; *Commonwealth* v. *McConnell*, 162 Mass. 499 (39 N. E. 107); *Heldt* v. *State*, 20 Neb. 492 (30 N. W. 626, 57 Am. Rep. 835); *State* v. *Ulsemer*, 24 Wash. 657 (64 Pac. 800); *Taylor* v. *Commonwealth*, 17 Ky. Law Rep. 1214 (34 S. W. 227).

In the case last cited it was said:

"It is also objected that appellant was asked why

he did not testify upon the examining trial, and it is claimed that this was in violation of section 223 of the Criminal Code providing that a defendant's failure to testify 'shall not be commented upon or be allowed to create any presumption against him.' *We think this provision is restricted to the trial and tribunal in which the failure to testify occurs,* and that when he takes the stand as a witness he may be subjected to cross-examination touching his credibility as any other witness."

Although there are some cases in Texas and Mississippi holding otherwise, we think this is a reasonable construction of the statute and the use to be made of it.   The statute was passed for those who do not care to become witnesses in their own behalf and not for those who do.   When a defendant testifies in his own behalf this statute has no application; it is the same as though the statute had never been passed. The idea behind the statute was to prevent a presumption of guilt being created by reason of the fact that defendant did not testify.   If there were any such presumption in the minds of the jurors in this case before defendant offered himself as a witness the moment he did so the presumption would at once be dissipated and the fact that he had refused to give testimony on the preliminary examination would be of no consequence.   To say to the prosecutor in one breath that when defendant takes the stand he may cross-examine him the same as any other witness; that he may cross-examine him with reference to every conceivable material thing, and then in the next breath say to him if he asks the defendant whether he was a witness at the preliminary hearing it is a violation of the statute and reversible error is, to say the least, not very consistent.   We are in accord with the construction suggested by *Taylor* v. *Commonwealth, supra,* and therefore conclude that the trial court was in no error when he instructed the jury that defendant had,

by becoming a witness, waived the benefit of the statute.

4. Complaint is made that the prosecutor was permitted to develop on the trial the fact that Mrs. Brown, the wife of deceased, claimed her constitutional privilege and refused to testify at the John Doe proceeding. This objection is based on the fact that Mrs. Brown was, according to the theory of the prosecution, the motive for the murder. Upon the cross-examination of Dove Prevost, a brother of defendant, he was asked:

"*Q.* At the time they were sworn, did you see Mr. John Lungerhausen and Mr. Weeks and hear them state and instruct your brother, Lloyd Prevost, not to make any answers to any questions?

"*Mr. McNamara:* The same objection, your honor.
*   *   *

"*Q.* You heard them tell him not to answer any questions, did you not?

"*A.* Yes, and I also heard Mr. Johns and Mr. Van-Duyke tell Mrs. Brown not to.

"*Q.* To answer no questions, you heard that, too?

"*A.* Yes, sir."

It will be observed that the witness answered the question of the prosecutor and volunteered the same answer as to Mrs. Brown. This was not responsive to the prosecutor's question, but defendant's counsel made no objection to the answer nor did they move to strike it out. Failing to do this they cannot now complain. *Kent Furniture Manfg. Co.* v. *Ransom,* 46 Mich. 416. But even if it could be said that the answer was responsive to the question I do not think it was error. Mrs. Brown was not a witness, neither was she on trial, and, therefore, she was not entitled to the protection of the statute. Counsel call our attention to *People* v. *Hall,* 48 Mich. 482 (42 Am. Rep. 477), in support of their contention. That case does not appear to us to be in point. The error in that

case was the refusal of the court to instruct the jury that the silence of the witness claiming the privilege could not be taken against the defendant on trial. We do not understand there was any similar request made on this trial.

5. Millie Jelsone was an important witness. She ran the hotel where defendant and deceased roomed. Soon after the murder, upon being questioned by the officers, she stated to them that defendant came in and went to his room about 9:30 p. m. She continued to tell this story to the officers and to the courts. Later she changed her story and testified at the trial that defendant came home at 2 o'clock in the morning and requested her to say to any one who asked that he retired to his room at 9:30 p. m. Upon her cross-examination it was developed that she was at the prosecutor's office in Detroit at the time she changed her story. The prosecutor then, upon redirect-examination, examined her from the statement made in his office which was taken by the court reporter. The statement covered conversations between Mrs. Jelsone and the prosecutor, and also statements by a Mr. Balone, who brought the witness to the prosecutor's office. Objection was taken to the conversations as being *ex parte* and hearsay.

Mrs. Jelsone completely reversed her testimony on an important point in the case. When this appeared, the average juror would be curious to know how and when and under what circumstances she changed her version of the affair. It was, therefore, competent to place before the jury all of her conflicting stories and the attendant circumstances under which they were made. When it appeared that the witness for the first time told a different story in the office of the prosecutor, it was competent to lay before the jury how she came to go to the prosecutor's office, what was said to her and by whom said, and what she said

bearing on the change in her testimony. It was only by showing these things and showing the inducements or influences, sinister or otherwise, by which she was led to make the change, that the jury would have a fair basis for determining whether she was to be believed at all, and, if so, which of her stories was entitled to credit. The trial court submitted to the jury the conflicting stories which the witness had told, and advised them, as follows:

"I want it understood that I am not permitting this as substantive proof, but simply for the purpose of enabling the jury to place the proper credit upon the testimony of this witness."

The course pursued by the trial court was in fairness to both sides of the controversy and enabled the jury to determine which, if either, of her stories was the true one. *People* v. *Davis*, 217 Mich. 661.

6. During the time defendant was being cross-examined the court took a recess. His counsel attempted to confer with him during the recess, but were prevented. This is assigned as error. Later, when counsel complained to the court that they had been prevented from talking with the defendant, the court said:

"The record may show that the court made the same order in reference to this witness that he made at the request of the defendant as to some other witnesses in the case, some other important witnesses; until the examination of the witness was completed, that no conversation should be held except in so far as the attorneys were concerned. There was no order prohibiting the attorneys from seeing Mr. Prevost."

It appears from the statement of the court and other parts of the record that a general order was made early in the trial at defendant's suggestion prohibiting the talking with witnesses while they were being cross-examined. The regulation was one which the court had the right to impose and was a reasonable one,

and applied to defendant himself while he was being cross-examined.

7. Attorneys for defendant offered a record of conviction of the witness Jelsone in the State of Pennsylvania for keeping a house of ill-fame. The court, at the time, refused to receive it until the Pennsylvania statutes were produced. Later these were produced and the following colloquy took place:

"*The Court:* Well, in order that there may be no question about it, I think I will allow it to be received so that the jury may use it for whatever it is worth.

"*Mr. Groesbeck:* I would like to be heard on certain parts of that before it is read.

"*The Court:* Very well, we can read it in the morning.

"*Mr. Groesbeck:* I think there are certain parts of it which are absolutely inadmissible.

"*Mr. Nunneley:* It is all inadmissible under the decisions of this State.

"*The Court:* We will take it up some time between now and tomorrow morning. The jury may retire and the audience remain seated."

After the jury retired the certificate of conviction was read into the record, but was not afterwards read to the jury. The prosecutor now makes the point that it was defendant's fault that it was not read. We cannot agree with him. Defendant's counsel offered the exhibit and the trial court postponed the time for reading it. Under our holdings we think that this was equivalent to a rejection of the certificate so far as affects defendant's right of review. *Young* v. *Railway Co.,* 56 Mich. 430; *Corning* v. *Woodin,* 46 Mich. 44. We are of the opinion, however, that it was not reversible error, as there were two other exhibits read to the jury tending to establish the same thing.

8. Complaint is made of the conduct of one of the attorneys for the people during the direct-examina-

tion of defendant. He was testifying as to the troubles Mr. and Mrs. Brown were having and stated that after Mr. Brown caught his wife going out with Wild he did not associate with her for a time:

"*Q.* What was the talk between you and Brown on that subject?

"*A.* Mr. Brown came to me.

"*Q.* Who did?

"*A.* Mr. Brown, and talked to me for several evenings down at his home alone, and wanted to know my opinion of the whole thing, whether it was her fault or his, and I told him I did not know, and he said 'Do you think I have been a little hasty on the proposition,' and I says 'Maybe you have, and all people have trouble,' and he said, 'Well you don't see much of it in the paper,' and I says, 'No, you don't, but when you come to the facts of the thing, they do.' Mr. Nunneley (referring to one of the prosecutors) has had trouble the same as Mr. Brown has.

"*Mr. Nunneley:* What is that?

"*A.* Yes, you have.

"*Mr. Nunneley:* Well, if the court please, what kind of a business is this? I do not know anything about that; what kind of dirt is this? This is the second time these people have come in here and attempted to throw dirt at me, and this is something that absolutely has nothing to do with this, and there was no such thing ever happened, and this man is an absolute liar when he says it. I think I am justified in making that statement; he is flat lying.

"*The Court:* Well, that may be stricken out. It has no place here."

Soon afterward, while prosecutor Nunneley was still smarting under the thrust made at him, the following took place. Defendant was testifying as to Brown's habit of taking chloroform and he stated that Brown's mother died a victim of that habit:

"*Q.* Did you know that fact?

"*A.* I did.

"*Q.* His mother died from using chloroform that way?

"*A.* She did.

"*Mr. Groesbeck:* He was present, I presume, your honor?

"*Mr. Hosner:* Just a minute. Are you cross-examining the witness?

"*The Court:* Proceed with the questions.

"*Mr. Nunneley:* Obviously lying again; you have not heard all his lies.

"*Mr. Hosner:* I think that is a very brilliant remark. *   *   *

"*Mr. Weeks:* Now, we object to it and take exception to it as absolutely improper.

"*The Court:* The jury will understand that they are not to try the case from what the lawyers say, but from what the witnesses say.

"*Mr. Weeks:* I never knew counsel to indulge in such a gross impropriety.

"*Mr. Hosner:* Well, your honor, we—

"*The Court:* The jury may take a rest and the attorneys can go out in the alley if they want to scrap."

The misconduct of counsel Nunneley complained of was the direct result of a nasty thrust made at him by defendant without provocation with reference to the chastity of his wife. The prosecutor is expected in the trial of criminal cases to observe the rules of decorum and to bear the many irritable and disagreeable things that come in his way without retort or comment. We realize, however, that there is a limit to the patience of a prosecutor. It was the most natural thing in the world that Nunneley should have resented the attack on his wife just as he did do, and if any ill effects resulted from it in the minds of the jurors the defendant has the satisfaction of knowing that no one was to blame for the outbreak but himself. A defendant cannot go out of his way to make an unwarranted attack on the chastity of the prosecutor's wife and then complain because the husband denies and resents the imputation in vigorous language. *Muncie Wheel & Jobbing Co.* v. *Finch,* 150 Mich. 274.

The remaining assignments will not be considered

as we think they are without merit. The case is singularly free from serious errors for one that was so protracted and so vigorously tried by both parties.

The judgment of conviction is affirmed.

FELLOWS, C. J., and WIEST, MCDONALD, SHARPE, and STEERE, JJ., concurred with BIRD, J.

CLARK, J. (*dissenting*). From the third conclusion reached by Justice BIRD, I dissent. Before defendant offered himself as a witness in the trial, counsel for the people, in cross-examination of a witness for the defendant, over objection of counsel and without justification appearing of record, were permitted to show that defendant had declined to testify at a coroner's inquest concerning the cause of death of Brown. Suggestion was also made that a certain other witness had not claimed such privilege. A John Doe or grand jury proceeding, so-called, was held under authority of chapter 267, 3 Comp. Laws 1915. The justice of the peace who sat in such proceeding was called by defendant and gave the dates of sittings and the names of persons summoned to testify before him. On cross-examination, over objection, the prosecution was permitted to show that defendant declined to testify at such proceeding, and to show, seemingly without objection, that defendant did not testify at the preliminary examination. Defendant's counsel moved to strike such testimony. The motion was denied. Later when defendant took the stand, counsel for the people were permitted, over objection, to interrogate him respecting his failure to testify in preliminary proceedings.

The interrogation of witnesses, comment, and reference, respecting the failure of the accused to testify at the inquest, at the John Doe proceeding, at the examination, constitute a positive prejudicial invasion of a substantial right of the accused under the law.

See statute quoted by Justice BIRD and section 16, article 2, State Constitution. The effect of permitting such practice before defendant is offered as a witness in his own behalf, is to compel him to take the stand, or suffer the consequences of the inferences, suspicions and prejudices engendered by the aspersions, comments and references upon his failure to testify in the preliminary proceedings, tantamount to a denial of the right.

There can be no quarrel with the rule announced by Justice BIRD and in the cases cited by him that where a defendant takes the stand and testifies in his own behalf he is then subject to the same cross-examination as any other witness. But that rule may not be extended to cover inquiry on cross-examination as to his failure to testify at a former hearing, trial, or proceeding in the cause. In this regard the cross-examination of defendant was improper.

It is said in 2 R. C. L. p. 432:

"The constitutional privilege of the accused in a criminal trial, not to have his failure to testify commented on by the prosecuting attorney, is waived where he takes the witness stand voluntarily for the purpose of giving testimony in his own behalf. By electing to testify, he places himself in the attitude of any ordinary witness, irrespective of any interest in the cause. As a party, his refusal to answer a particular question, on the ground that such answer would tend to criminate him, could afford him no exemption from the inferences which would naturally attach to any other witness, not a party, in such circumstances. His object in taking the witness stand is to show himself innocent of the offense by testifying. Putting himself in such a position, and declining to testify except as to such matters as would tend to exculpate him, refusing to answer the direct, competent and material inquiry raised by the case, is a matter of significance which it is the right, if not the duty, of a prosecuting attorney and of the court to bring prominently to the attention of the jury.

The waiver, however, extends only to the particular trial, while the inhibition against such comments extends to all trials. A prosecuting attorney, therefore, cannot properly comment on the failure of the defendant to take the witness stand in a former trial though he testifies at the trial during which the comments were made. The constitutional privilege is not waived by counsel for the defendant stating the reasons why the defendant did not testify on the trial. The absolute exemption, secured a defendant by the constitution and laws, from being compelled to testify, and from having his omission to do so used in any way to his detriment, cannot be affected by superfluous or irregular suggestions of counsel in the heat of argument. That exemption can only be waived by the defendant's own election to avail himself of the statute, and to go upon the stand as a witness."

The following from *Templeton* v. *People*, 27 Mich. 501, in which, at the trial, examination of the original record discloses, defendant testified in his own behalf:

"On the trial the prosecution was allowed, under objection, to give in evidence the return of the examining magistrate, to show that upon the examination he (defendant) gave no evidence, and the court instructed the jury that they were at liberty to consider this as entitled to more or less weight, as it should seem to them proper and just, as evidence bearing on the prisoner's guilt.

"We think in this the court erred. While we do not doubt but that the fact that a person charged with crime makes no defense on the preliminary examination may be necessary and proper evidence frequently to support or establish some point or proposition, we are clearly of opinion that it cannot be introduced, as in this instance, on the trial of the charge on which he was examined, to prove his guilt. The statute expressly gives the prisoner an election to make or not make defense on his examination before the magistrate, and any rule which would make the exercise of such right, one way or the other, a ground of presumption against his innocence on the trial, would be nearly, if not quite, tantamount to a denial of the right altogether. The law wisely leaves

him to his free choice to put in evidence or not, before the magistrate, and this privilege cannot be hampered by making its exercise one way a ground of inference on the trial, of his criminality. The right to refrain from defensive action before the magistrate is as clearly given as the right to take the contrary course, and it would be reflecting upon the consistency and justice of the law to say that while it secures this as an absolute right of the prisoner in the proceedings, it at the same time turns it into evidence against him."

See, also, *Sullivan* v. *People,* 31 Mich. 1; *People* v. *Hillhouse,* 80 Mich. 580; *People* v. *Salisbury,* 218 Mich. 529.

We quote from 16 C. J. p. 901:

"In most jurisdictions, however, the statutes provide that accused's failure to testify shall not create any presumption against him, and generally forbid the prosecution from commenting upon such failure. Under such statutes it is improper and erroneous for the prosecuting attorney to comment upon, or to make any reference in his argument to, accused's neglect or failure to take the stand and testify, either directly or so pertinently as to direct the jury's attention to such fact, and it is the duty of the court to see that such impropriety is not committed. A statute forbidding such comment applies to a failure to testify at the preliminary trial, upon an application for bail, at a hearing on *habeas corpus,* or at a previous trial of the case.  *  *  *  It has been held to be erroneous to make comments upon accused's failure to testify in advance of the time when he may be called as a witness."

It was held in *Smithson* v. *State,* 127 Tenn. 357 (155 S. W. 133), quoting from syllabus:

"The statutory provision  *  *  *  that the failure of the accused to testify in his own behalf shall not create any presumption against him, applies to his former trial, as well as to his pending trial, so as to make it improper for the State's counsel to comment on the failure of the accused to testify in his former trial or trials."

And in *Swilley* v. *State*, 73, Tex. Crim. Rep. 619 (166 S. W. 733) :

"Again it was improper for the district attorney to ask the witness whether or not he testified at the *habeas corpus* trial. He had the right to testify or not, as he saw proper, and the fact he did not deem it necessary nor advisable to testify on the *habeas corpus* hearing would not be a circumstance against him. *Brown* v. *State*, 57 Tex. Crim. Rep. 269 (122 S. W. 565), and cases there cited."

And in *Eads* v. *State*, 66 Tex. Crim. Rep. 548 (147 S. W. 592), quoting from syllabus:

"Under the statute prohibiting any allusion to accused's failure to testify, it is improper for the district attorney to state in argument that accused failed to testify in the examining trial, and that the record showed that he had never denied the killing until the present trial, when he admitted it."

And in *Bunkley* v. *State*, 77 Miss. 540 (27 South. 638), quoting from syllabus:

"Under Ann. Code, § 1741, providing that an accused's failure to testify shall not operate to his prejudice, or be commented on by counsel, it is error to admit evidence of an accused's failure to testify at a preliminary trial, or to permit the counsel for the State to comment on such evidence."

And in *Smith* v. *State*, 90 Miss. 111 (43 South. 465, 122 Am. St. Rep. 313), quoting from syllabus:

"It is error to permit the defendant to be questioned, on his cross-examination as a witness, as to whether he had testified at his former trial, because it is equivalent to a comment on his failure to appear as a witness at such former trial."

And in *Hare* v. *State*, 56 Tex. Crim. Rep. 6 (118 S. W. 544, 133 Am. St. Rep. 950), quoting from syllabus:

"Where one on trial for felony testifies in his own behalf, it is error to permit the district attorney to bring out on cross-examination, and then comment on

the fact in his argument, that the accused did not take the stand on a former trial of the case.

"A statute providing that the failure of a defendant to testify in his own behalf shall not be taken as a circumstance against him nor be referred to by counsel, is mandatory, and covers the proceedings on a former trial."

And in *Parrott* v. *Commonwealth*, 20 Ky. Law Rep. 761 (47 S. W. 452), quoting from syllabus:

"Criminal Code, § 223, subd. 1, providing that the defendant in criminal prosecutions may testify, 'but his failure to do so shall not be commented upon,' applies equally to a failure to testify on the examining trial as before a trial jury, and the court should not permit the prosecuting attorney to comment on such failure."

See, also, 1 Wharton Criminal Evidence (10th Ed.), p. 916. Underhill Criminal Evidence (2d Ed.), p. 115. *Bennett* v. *State*, 86 Ga. 401 (12 S. E. 806, 12 L. R. A. 449) ; *People* v. *Watson*, 216 N. Y. 565 (111 N. E. 243, Ann. Cas. 1917D, 280).

But see Underhill on Criminal Evidence (2d Ed.), p. 118, citing *Taylor* v. *Commonwealth*, 17 Ky. Law Rep. 1214 (34 S. W. 227).

Had the requests to charge preferred by counsel for defendant upon this subject been given the question of whether such error might be cured by instructions might require consideration. See *People* v. *Hess*, 85 Mich. 128. But under the charge given that question is not before us.

Upon the fifth conclusion reached by Justice Bird, I reserve opinion.

It follows that there should be reversal, new trial, and remanding of the defendant to the custody of the sheriff of Macomb county.

Moore, J., concurred with Clark, J.