PEOPLE *v.* HAVEY.

1. CRIMINAL LAW—INFORMATION—FILING.
    The statute authorizing informations does not require a statement of the term in which the information is to be filed (CLS 1961, § 767.40).

2. APPEAL AND ERROR—QUESTIONS REVIEWABLE—QUESTIONS NOT RAISED IN TRIAL COURT.
    Court of Appeals will not consider question on appeal that was not raised in the trial court.

3. CRIMINAL LAW—CHANGE OF VENUE—DISCRETION OF TRIAL COURT.
    Trial court's denial of a motion for change of venue by defendant, who was charged with armed robbery, *held*, not to be an abuse

REFERENCES FOR POINTS IN HEADNOTES
[1]  27 Am Jur, Indictments and Informations §§ 33, 44.
[2]  5 Am Jur 2d, Appeal and Error § 545.
[3]  21 Am Jur 2d, Criminal Law §§ 427, 428.
[4]  21 Am Jur 2d, Criminal Law §§ 236, 426.
[5]  21 Am Jur 2d, Criminal Law § 240.
[6]  21 Am Jur 2d, Criminal Law § 343.
[7, 8]  58 Am Jur, Witnesses §§ 767, 774, 801.
[9]  21 Am Jur 2d, Criminal Law §§ 533, 545.

of discretion, where a jury was impaneled that was satisfactory to both prosecution and defense, and defendant failed to show that the denial of a change of venue was prejudicial (CLS 1961, § 750.529).

4. Same — Jury — Polling During Trial — Discretion of Trial Court.

Trial court's denial of request that the court question the jurors as to whether they had heard radio newscasts commenting on the past criminal record of the defendant, who was charged with armed robbery, held, not to be an abuse of discretion, since mere supposition that some of the jurors may have heard the newscasts was not sufficient to constitute prejudicial error (CLS 1961, § 750.529).

5. Same—Accused's Appearance Before Jury in Handcuffs.

Appearance of defendant, who was charged with armed robbery, in handcuffs outside the courtroom during recesses where jurors had an opportunity to observe him, held, not to have been grounds for mistrial, where police were justified in taking close security precautionary measures to prevent defendant's escape because of defendant's previous record (CLS 1961, § 750.529).

6. Constitutional Law—Criminal Law—Right of Confrontation of Witnesses.

Trial court's permitting testimony of witness taken at the preliminary examination to be admitted into evidence against the defendant at trial for armed robbery, where the witness was not available to testify at the trial because of his death, held, not to be a denial of defendant's constitutional right to confrontation of witnesses, where defendant was represented by counsel at the preliminary examination and had an opportunity for and had cross-examined the witness (US Const, Ams 6, 14; CLS 1961, § 750.529).

7. Criminal Law—Evidence—Impeached Witnesses—Prior Inconsistent Testimony—Hearsay.

Trial court's limitation of defense counsel's questioning of a witness called on behalf of a defendant charged with armed robbery, when counsel attempted to elicit from the witness, impeached by prior inconsistent testimony, the reason for his change of testimony, held, not to be an abuse of discretion, where the court's limitation went only to the witness giving hearsay testimony and not to his reason for his change of tes-

timony, and where his reason was eventually elicited within the limits set by the court (CLS 1961, § 750.529).

8. SAME—EVIDENCE—IMPEACHED WITNESSES—PRIOR INCONSISTENT TESTIMONY—HEARSAY.
   Trial court's restriction of a witness called on behalf of a defendant charged with armed robbery from giving hearsay testimony in an attempt to explain his reasons for prior inconsistent testimony *held,* not to be an abuse of discretion, where no prejudicial error resulted to the defendant, where the circumstances which led to the inconsistent testimony and the reason for it were placed before the jury, which had a fair basis for determining which of the witness' inconsistent stories, if either, was true (CLS 1961, § 750.529).

9. SAME—SENTENCE—CREDIT FOR TIME SPENT IN JAIL BEFORE TRIAL.
   Trial court's computation of defendant's credit for time served in jail prior to conviction and sentencing for armed robbery *held,* to be erroneous, for failure to give credit to defendant for time served in Oregon while awaiting extradition to Michigan (PA 1927, No 175, ch 9, § 116, added by PA 1965, No 73).

Appeal from Kent, Hoffius (Stewart), J. Submitted Division 3 November 9, 1967, at Grand Rapids. (Docket No. 2,291.) Decided April 3, 1968. Leave to appeal denied June 20, 1968. See 381 Mich 756.

Birney T. Havey was convicted of robbery armed. Defendant appeals. Affirmed as modified.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney and *S. J. Venema,* Assistant Prosecuting Attorney, for the people.

*Robert Benson,* for defendant on appeal.

HOLBROOK, J. Defendant-appellant, Birney T. Havey, was found guilty by a jury of armed robbery[1] and sentenced to a term of 10 to 25 years.

---

[1] CLS 1961, § 750.529 (Stat Ann 1968 Cum Supp § 28.797).

. The facts pertinent on appeal are as follows: On January 29, 1959, the L. E. Phillips Jewelry Store, located in the city of Grand Rapids, Michigan, was robbed by 2 men shortly after 8:30 a.m. During the course of the robbery, one of the men struck Curtis Koontz, the watchmaker and jeweler, across the face with a pistol breaking his glasses and cutting his face. The 2 men left the store with about $10,000 in jewelry and were observed making their getaway in a car driven by a third man.

On November 6, 1963, 4-1/2 years after the robbery, a complaint charging defendant and Kenneth Raymond Midling with the armed robbery was sworn out. Previously Mr. Koontz had identified defendant from police mug shots as the man who struck him with a pistol. Following defendant's arrest, a preliminary examination was held on March 12 and 13, 1964, and defendant was bound over for trial. In March of 1964, before trial, while free on bond, defendant left the State of Michigan. Defendant was tried on a burglary charge in Portland, Oregon, which resulted in an acquittal in December, 1964. The Michigan authorities extradited defendant successfully, with defendant's return on November 1, 1965.

Trial of defendant and Midling for armed robbery commenced on December 6, 1965, but ended in a mistrial when Mr. Koontz collapsed and died on the witness stand. Trial commenced again on April 11 and continued until April 19, 1966, at which time the jury returned a verdict of guilty as charged against defendant, Birney T. Havey.

Restated, the questions raised by defendant will be dealt with in proper order as follows:

*1. Was the information void on its face?*

Defendant asserts the information was void on its face because therein the prosecution claimed

to come into court in the December term of 1963, but the return from the Grand Rapids police court was not filed until February 7, 1964. The calendar of entries in the record shows the return filed February 7, 1964; the next entry shows the information to have been filed on the same day.

We are not informed of the terms of the Kent county circuit court and the information may have been filed during the December term as stated in the information. However, CLS 1961, § 767.40 (Stat Ann 1968 Cum Supp § 28.980) does not require a statement of the term in which the information is filed. The statute reads in part as follows:

"All informations shall be filed in the court having jurisdiction of the offense specified therein, after the proper return is filed by the examining magistrate, by the prosecuting attorney of the county as informant."

In any event this matter was not raised and ruled upon in the trial court and cannot be raised for the first time on appeal. *People* v. *Will* (1966), 3 Mich App 330; *People* v. *William L. Thomas* (1965), 1 Mich App 118, 128, 129.

*2. Did the trial court abuse its discretion in denying defendant's pretrial motion for change of venue?*

A motion for change of venue based on claimed prejudicial pretrial publicity was considered in the recent case of *People* v. *Dailey* (1967), 6 Mich App 99, 102, 103:

"One of the reasons alleged in the motion for change of venue was that defendant's right to receive a fair and impartial trial had been jeopardized by publication in local newspapers of articles concerning the offense and the guilty pleas by three of the participants in which the name of defendant was linked with the other three. The trial court reserved

decision on the motion until an attempt was made to obtain a fair and impartial jury. This is the approved procedure. *People* v. *Swift* (1912), 172 Mich 473. After extensive *voir dire* examination of two jury panels and some talesmen and on the basis of answers on the *voir dire* examination, the trial judge obtained what he believed to be a fair and impartial jury. He then denied the motion for change of venue and proceeded to trial.

"This motion was also addressed to the trial court's discretion. CL 1948, § 762.7 (Stat Ann 1954 Rev § 28.850). To establish error an abuse of discretion must be shown. *People* v. *Swift, supra*. The rule applicable to allegations such as are here raised by defendant is aptly stated in *Swift, supra*, p 480, in a quotation from 24 Cyc p 298 as follows:

" 'Newspaper reports are ordinarily regarded as too unreliable to influence a fair-minded man when called upon to pass upon the merits of a case in the light of evidence given under oath; and it is now a well-settled rule that a juror, although he may have formed an opinion from reading such reports, is competent if he states that he is without prejudice and can try the case impartially according to the evidence and the court is satisfied that he will do so.' " (Footnote omitted.)

Now it is true that the trial court in the instant case did not reserve decision on the motion until after an attempt was made to obtain a fair and impartial jury. However, the same result was obtained as in *People* v. *Dailey, supra*, by reason of the court being able to impanel a jury that was satisfactory to both prosecution and defense counsel. Defendant has failed to show where the denial of change of venue was prejudicial. No abuse of discretion has been shown.

*3. Did the trial court commit error in refusing to question the jurors on the first day of trial as to whether they had heard a certain radio newscast?*

The jury was selected and impaneled on April 11, 1966, after which time a recess was taken. On the following day, April 12, when actual trial commenced, counsel for codefendant Midling requested out of the presence of the jury that the trial court inquire whether the jurors had heard any radio newscasts.[2] Defendant's trial counsel joined in the request. The trial court first determined that the request was limited to an inquiry of radio newscasts on WLAV, and then refused to question the jury as requested. Defendant claims the denial of the request to be an abuse of discretion by the trial court and prejudicial error.

A request to interrogate or poll the jury during trial as to their listening to radio newscasts puts in question the fairness and impartiality of the trial. Thus, like motions for mistrial or new trial, there is an appeal to the sound discretion of the court. See *People* v. *Schram* (1965), 1 Mich App 279 (affirmed, [1966], 378 Mich 145).

The statements (see footnote 2) of co-defendant Midling's counsel in making the request contained merely the probability or supposition that some of the jurors may have heard the claimed radio newscasts. We conclude that this was not sufficient and the trial court's refusal did not constitute

---

[2] "Your Honor, this morning I would move that your Honor inquire of the jurors as to whether they have heard any of the broadcasts that have been prevalent since this trial has started in which it was referred to—at least by WLAV—to the fact that both Mr. Midling and Mr. Havey were brought here from other—from prison where they were doing time for other crimes, to be tried here in Kent county. And we feel that at least some of the jurors if they had the radios on at all during the noon hour or during the hours when there are noon broadcasts, certainly have heard that, and we would also like to—well, that's our motion. * * *

"I heard three broadcasts, and they went something like this, and these were from WLAV. The last one I heard was this morning at 8:30, or whatever it is, on the way down here, that Mr.—the trial of Mr. Havey and Mr. Midling would continue this morning, that Mr. Havey had been continued on three bonds and he was brought here from serving time in another prison."

an abuse of discretion under present authorities. *People* v. *Green* (1948), 323 Mich 128, 132, 133; *People* v. *Fleish* (1948), 321 Mich 443, 456, 457; 15 ALR2d 1152, 1153.

*4. Was it prejudicial error for defendant to be seen in handcuffs by jurors?*

On the third day of trial defendant's trial counsel made a motion for mistrial on the ground that jury members had opportunity on 2 occasions to observe defendant in handcuffs outside the courtroom during recesses. Specifically, defendant was led from the courtroom by a police officer, and upon entering the adjoining corridors, defendant was handcuffed to either codefendant Midling or witness Moreland and taken to a police car. The procedure was carried out while jury members were in the corridors entering or leaving the courtroom.

We find no error in the trial court's denial of this motion for mistrial. Defendant's previous record indicates that he did not merit trust and confidence by the police officers. The close security measures taken were justified and cannot be said to have constituted prejudicial error. See, by way of comparison, *People* v. *William L. Thomas, supra,* p 126.

*5. Was the testimony of Curtis Koontz, taken upon preliminary examination, properly admitted into evidence under CL 1948, § 768.26 (Stat Ann 1954 Rev § 28.1049), where the witness was not available by reason of death?*

The trial court allowed the prosecution to put in evidence witness Koontz' testimony appearing in the transcript of defendant's preliminary examination. Defendant's trial counsel's objection was overruled on the basis of CL 1948, § 768.26 (Stat Ann 1954 Rev § 28.1049), which provides as follows:

"Testimony taken at an examination, preliminary hearing, or at a former trial of the case, or taken

by deposition at the instance of the defendant, may be used by the prosecution whenever the witness giving such testimony can not, for any reason, be produced at the trial, or whenever the witness has, since giving such testimony become insane or otherwise mentally incapacitated to testify."

The constitutionality of this statute was upheld in *People* v. *Pickett* (1954), 339 Mich 294 (certiorari denied) 349 US 937 (75 S Ct 781, 99 L Ed 1266). Also, see *People* v. *Doverspike* (1966), 5 Mich App 181, 190.

Defendant asserts in his brief that "on April 6, 1965, the United States Supreme Court in the case of *Pointer* v. *Texas* (1965), 380 US 400 (85 S Ct 1065, 13 L Ed 2d 923) handed down an opinion which changed the then existing Michigan law." We do not read the *Pointer Case* as changing "existing Michigan law". In *Pointer,* the United States Supreme Court held the "Sixth Amendment's guarantee of a defendant's right 'to be confronted with the witnesses against him,' which has been held to include the right to cross-examine those witnesses, is * * * applicable to the States by the Fourteenth Amendment." Pointer specifically decided that "the Sixth Amendment's guarantee of confrontation and cross-examination [at the Texas "examining trial"] was unquestionably denied petitioner [Pointer]."

In the instant case, defendant was given the constitutional right of confrontation including cross-examination of witness Curtis Koontz. The use of the preliminary examination transcript at trial did not deny defendant *any opportunity to have the benefit of counsel's cross-examination of the principal witness against him* as the use of the Texas "examining trial" transcript did defendant Pointer in the *Pointer Case*: Defendant Havey was *repre-*

*sented by counsel,* defendant Pointer was not; defendant Havey's counsel was *given a complete and adequate opportunity to cross-examine* Curtis Koontz and in fact cross-examined the witness at length. *People* v. *Chapman* (1968), 380 Mich 74.

*People* v. *Wilcox* (1942), 303 Mich 287, 295 sets forth as one of the purposes for having preliminary examinations the desire of the State "to perpetuate the testimony in the event that a witness shall disappear or die before the trial." What is required by *Pointer, supra,* is explained by Mr. Justice Black's opinion at p 407:

"The case before us would be quite a different one had [witness] Phillips' statement been taken at a full-fledged hearing at which petitioner [Pointer] had been *represented by counsel* who had been given *a complete and adequate opportunity to cross-examine.*" (Emphasis supplied.)

We conclude that defendant Havey's preliminary examination under the Michigan statute[3] was "a full-fledged hearing,"[4] and the admitting at trial of the preliminary examination transcript of the testimony of witness Curtis Koontz did not result in a denial of defendant Havey's constitutional right of confrontation.

*6. Did the trial court commit prejudicial error in limiting defense counsel's questioning of witness Moreland as to the reason for his change in testimony between the preliminary examination and trial?*

At the preliminary examination, people's witness John Moreland testified that defendant Havey and codefendant Midling were his accomplices in the

---

3 CL 1948, § 766.1 (Stat Ann 1954 Rev § 28.919).

4 "Michigan requires the holding of a preliminary examination with rights of confrontation and cross-examination." *People* v. *Blessing* (1966), 378 Mich 51, 66.

armed robbery.  However, at trial, Moreland testi-
fied that he, Moreland, John Criswold, and "Slim"
Pleudo were the 3 persons who robbed the jewelry
store.  The prosecutor, on receiving inconsistent tes-
timony from Moreland, utilized Moreland's prelim-
inary examination testimony for impeachment pur-
poses.  Also, the prosecutor cross-examined More-
land following the trial court's determination that
he was a hostile witness.

Following the prosecution's examination of More-
land, counsel stated: "I wish to refrain from ques-
tioning the witness at this time."  Then, at a later
time, defense counsel called Moreland as a witness
on behalf of defendant Havey.  In direct examina-
tion of Moreland he attempted to elicit from the
witness the reason for his change in testimony be-
tween the preliminary examination and trial.  These
attempts were objected to by the prosecution and
the objections were sustained by the trial court.

Defendant cites *People* v. *Babcock* (1942), 301
Mich 518; *People* v. *Prevost* (1922), 219 Mich 233,
and *People* v. *Payne* (1902), 131 Mich 474, for
the proposition that an impeached witness has the
right to "explain away" prior inconsistent testimony,
and a further right to relate the circumstances, and
what was said by himself and others in so doing; he
contends that because the trial court restricted wit-
ness Moreland's exercise of these rights, prejudicial
error was committed.

The trial court's restriction went only to More-
land's testifying of what others told him and not
to his disclosing the reason for changing his pre-
liminary examination testimony at trial.  The reason
for the inconsistent statements was eventually elic-
ited within the bounds set by the trial court.

*(By defense counsel)*

"*Q.* The objectionable thing here, Mr. Moreland, is you are testifying today as to what other people told you on some other occasion; is that clear?

"*A.* Yes.

"*Q.* All right. Now, you were able to tell us why you named Midling as your accomplice when you have told us it wasn't the truth, isn't that right?

"*A.* Yes.

"*Q.* And you have given us that reason without relying upon what anybody else told you? You didn't have to quote somebody else for you to tell us why you named Midling, isn't that correct?

"*A.* Yes.

"*Q.* Can you do the same thing insofar as Mr. Havey is concerned?

"*A.* The consensus of opinion was the same with Havey as it was with Midling.

"*Q.* And what was that, sir?

"*A.* That they thought that because I was associated with them, that they in turn were associated with me in my criminal activities.

"*Q.* And how did this benefit you, if it did, by naming these people?

"*A.* It was about 95 per cent of my getting probation.

"*Q.* Now, this is one question I have not asked you, Mr. Moreland. Why are you now telling us in this trial that Mr. Havey was not with you, which you claim to be the truth of the matter?

"*A.* Because I don't want it on my hands if he's found guilty. This has to come out. The truth has to come out."

This leaves for consideration a narrower question: Did the trial court commit prejudicial error in preventing Moreland from testifying as to what others told him? *People* v. *Prevost, supra,* and *People* v. *Babcock, supra,* would sustain the admissibility of explanatory testimony by an impeached

witness of statements made by third parties.[5]   In
the instant case, however, no prejudicial error re-
sulted to defendant Havey; the circumstances which
led the witness naming Havey, including the persons
involved, were disclosed at trial.   The inducement
or influence ("It was about 95 per cent of my getting
probation") which brought about Moreland's pre-
liminary examination testimony implicating defend-
ants Havey and Midling was placed before the jury
and it was not without a fair basis for determining
which of Moreland's inconsistent stories, if either,
was a true one.

7. *Did the trial court commit error in correcting
defendant's sentence pursuant to a motion filed un-
der PA 1927, No 175, ch 9, § 11b, as added by PA
1965, No 73 (MCLA § 769.11b, Stat Ann 1968 Cum
Supp § 28.1083[2]), effective March 31, 1966?*

The above act provides:

"Whenever any person is hereafter convicted of
any crime within this state and has served any
time in jail prior to sentencing because of being
denied or unable to furnish bond for the offense of
which he is convicted, the trial court in imposing
sentence shall specifically grant credit against the
sentence for such time served in jail prior to sen-
tencing."

---

[5] "Mrs. Jelsone completely reversed her testimony on an important
point in the case.  When this appeared, the average juror would be
curious to know how and when and under what circumstances she
changed her version of the affair.  It was, therefore, competent to
place before the jury all of her conflicting stories and the attendant
circumstances under which they were made.  When it appeared that
the witness for the first time told a different story in the office of
the prosecutor, it was competent to lay before the jury how she came
to go to the prosecutor's office, what was said to her and by whom
said, and what she said bearing on the change in her testimony:  It
was only by showing these things and showing the inducements or
influences, sinister or otherwise, by which she was led to make the
change, that the jury would have a fair basis for determining whether
she was to be believed at all, and, if so, which of her stories was en-
titled to credit." *People* v. *Prevost*, 219 Mich 233, 241, 242.

On May 17, 1966, the trial court corrected defendant's 10-to-25 year sentence, crediting defendant with 50 days (November 1, 1965, to December 20, 1965) of time served prior to sentencing pursuant to the statute. It is defendant's contention that the trial court committed error because credit was not allowed which would reflect the time served in Oregon while he was awaiting extradition to Michigan.[6]

The record discloses that defendant was detained on a fugitive complaint on December 10, 1964, and released to Michigan authorities on November 1, 1965.

Helpful in determining whether PA 1965, No 73 should be construed as requiring credit for time served in another jurisdiction is the following statement of law from 24B CJS, Criminal Law, § 1995 (4), p 641:

"Statutes relating to the computation of time served under a sentence, and the allowance of credit thereon for time served under particular circumstances, were designed to confer a benefit on the person lawfully detained, and may not be interpreted to his detriment."

Directly aiding our determination, 24B CJS, Criminal Law, § 1995 (5), p 645, states:

"The right to credit under the statute is not limited to the time spent in prison or jail in a jurisdiction, but also includes the time spent in jail in another jurisdiction, in which he was apprehended, preliminary to being sent back for trial."

A proper, unrestrictive interpretation of PA 1965, No 73 would result in a further credit against de-

---

[6] Oregon and Michigan have enacted the uniform criminal extradition act. See ORS 1963, § 147.010 et seq.; CL 1948, § 780.1 et seq. (Stat Ann 1954 Rev § 28.1285[1] et seq.).

fendant's sentence for time served in Oregon from December 10, 1964, to November 1, 1965.

Affirmed as modified and remanded for correction of defendant's sentence in accord with this opinion.

LESINSKI, C. J., and BURNS, J., concurred.