COMMONWEALTH *vs.* JOHN M. McCAMBRIDGE.

Suffolk.    November 9, 1966. — January 4, 1967.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Evidence,* Admissions and confessions, Relevancy and materiality, Res gestae.    *Constitutional Law,* Assistance of counsel, Admissions and confessions.    *Practice, Criminal,* Assistance of counsel.    *Federal Law.    Law or Fact.    Arrest.    Homicide.    Firearms.*

Whether the defendant in a manslaughter case was under arrest at the time the victim made accusatory statements to police in the presence of the defendant and he kept silent was a question of law for the court. [520]

Under *Johnson* v. *New Jersey,* 384 U. S. 719, the Federal Constitution did not require the application of the principles set forth in *Miranda* v. *Arizona,* 384 U. S. 436, to a Massachusetts criminal case tried before the date of the decision in the *Miranda* case, and this court declined to so apply such principles.    [520–521]

---

The principles set forth in *Escobedo* v. *Illinois,* 378 U. S. 478, did not pre-
clude consideration of an alleged admission by the defendant in a
Massachusetts manslaughter case arising from a fatal affray between
the defendant and the victim where it appeared that the alleged admis-
sion, by silence of the defendant in the face of accusatory statements
made by the victim to police in the defendant's hearing in the absence
of any lawyer, occurred on a public street at night at the scene of the
affray and while it was being broken up by police and when the victim
was mortally wounded and within a few minutes of death, and it did
not appear that the defendant said he had a lawyer or asked to consult
with one. [521]
At the trial of indictments for unlawfully carrying a revolver and for the
death of a man shot, there was no error in the admission of a tear gas
cartridge and a jackknife removed from the defendant's person during
a quick search by a police officer immediately after the defendant and
the victim had been pulled from an automobile in which they had been
engaged in a violent struggle. [521]
Conviction of the defendant upon indictments for manslaughter and un-
lawfully carrying a revolver was warranted by evidence at the trial that
the victim, who had been engaged in a violent struggle with the de-
fendant in an automobile owned and operated by the defendant, on the
floor of which were found six live bullets for the revolver with which
the victim was shot, thrice stated to police in the defendant's hearing
"He's got a gun. He just shot me," and that the defendant kept silent;
it was immaterial that the source or ownership of the revolver was not
shown. [522]

INDICTMENTS found and returned on November 6, 1964.

The cases were tried in the Superior Court before
*Quirico, J.*

*Lawrence H. Norris* for the defendant.

*John T. Gaffney,* Assistant District Attorney, for the
Commonwealth.

WILKINS, C.J. The defendant was convicted of man-
slaughter and unlawfully carrying a revolver in a trial sub-
ject to G. L. c. 278, §§ 33A–33G. His appeals are accom-
panied by a summary of the record, a transcript of the
testimony, and an assignment of errors.

We state facts which the jury could have found. On
October 10, 1964, about 10 P.M. Officer Vellante, accom-
panied by Sergeant Ronayne and Officer Calnan, was driv-
ing an unmarked Boston police car on Bartlett Street in the
Roxbury district when he saw a Mercury two-door sedan
swerve to the left and right, jump the sidewalk, and hit a

fence.   He stopped, got out of the car, and opened the door
on the passenger side of the sedan.   He then observed the
defendant and one Charlebois in a violent struggle.   The
defendant was on the rear floor lying on his side.   Three
quarters of Charlebois' body was over the front seat toward
the rear floor.   He was leaning over with one hand on top
of the defendant.   They were fighting, and there was a
thirty-two calibre revolver in the palms of both.   Their
hands were about one inch and one half off the floor.   Of-
ficer Vellante grabbed the revolver by the barrel and put it
in his pocket.   Just as Officer Vellante opened the door
Charlebois turned and made the statement, ''He's got a
gun.   He just shot me.''   Officers Calnan and Vellante re-
spectively pulled Charlebois and the defendant out of the
sedan.   The defendant was brought to the police car and
searched.   Officer Calnan stood Charlebois against the
front fender of the sedan and gave him a quick search.
Charlebois then repeated his statement twice, first some six
feet from the defendant and again when he was at the most
two feet away from the defendant.   He spoke loudly enough
for all to hear.   The defendant, when asked by an officer
what happened, said, ''The son of a b. pulled a gun on me.''
When the officer asked why, he said that he did not know.
At this point, according to the sergeant's testimony, the de-
fendant was placed under arrest.

There were three live and three spent bullets in the re-
volver, which required an eleven-and-one-half to twelve
pound pull on the trigger to cause it to discharge, which
was a pound to a pound and one half more than normal.
Charlebois died from gunshot wounds of chest, heart, and
lung, one bullet entering the breast bone and another enter-
ing below the fifth rib on the right.   There were two bullet
holes on the back side of the driver's seat.   In the uphol-
stery above the rear window were two holes, and directly
behind one of the holes on the inside there was an indenta-
tion in the top of the steel roof which did not penetrate to
the outside.

The sedan was registered to the defendant and operated
by him.

1. The defendant's first argument is that "the trial judge erred in instructing the jury with respect to admissions, or admissions by silence or failure to deny: and by permitting Officer Ronayne to testify that the defendant did not deny shooting Charlebois." These contentions are stated to be based on assignments of errors 3 and 6.

The third assignment of error is: "By permitting Officer Ronayne to testify that the defendant did not deny shooting Charlebois. Under the circumstances, the defendant was not required to deny anything, and the absence of a denial could not be used against him either as an admission or otherwise. He was under arrest, and even if he was not, to permit such testimony amounted to a denial of his rights, under the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, to have counsel at all stages, to be protected against self incrimination, and to due process of law and equal protection of the laws."

The same statement in substance is in the sixth assignment of error which relates to instructions to the jury.

We quote from the defendant's brief all that is quoted from the instructions to the jury: "You had evidence that, at the scene where the automobile came to a stop and the defendant and Charlebois were found, Charlebois made certain statements. You should decide whether those statements were made. You should decide whether they were made within the hearing of the defendant. You should then decide what the reaction of the ordinary and reasonable person would be if he is not guilty of the things charged by Charlebois. If you find that the normal, ordinary reaction of a person who is not guilty of the things charged by Charlebois would be to deny the accusation and if you find that the defendant, having heard the accusation, failed to deny it, you may consider the failure to deny, and you decide whether that is inconsistent with his present claim of innocence."

The exception was "to so much of the charge as concerns the instructions on admissions; I should say, particularly with reference to that portion of the instructions concerning implied admissions by silence or failure to deny."

The only exception to evidence which is argued is that to the question to Sergeant Ronayne on redirect examination. The defendant seeks to give this question an unreasonably broad interpretation, which we do not accept. It obviously was reasonably to be understood in context as applying to the period covered by the previous testimony and not as an interrogation whether he made denial even under arrest.

The subject of arrest does not appear to have been mentioned to the trial judge at any time. The only reference to arrest in the pertinent testimony was the opinion of Sergeant Ronayne. The first appearance of reliance upon any question of arrest is in the assignment of error above quoted. No exception was expressly based upon the ground that the defendant was under arrest.

We are not directed to any specific statements which even now are alleged to have taken place after the defendant was placed under arrest. If the defendant's argument, although not so expressed, is intended to be directed to every time the deceased made the statement both inside and outside the sedan, we do not agree that the defendant was "at all times under arrest." We think that the evidence presented no such issue of fact, and that this was a question of law which the trial judge decided correctly. See *Commonwealth* v. *LaBossiere*, 347 Mass. 384, 387, and cases cited. See also *Commonwealth* v. *Rogers, post*, 522.

The exception to the question asked Sergeant Ronayne is not argued separately but only as part of the same argument as the exception to the charge. This argument is an effort to extend to this case, the trial in which began on May 20, 1966, the operation of the decision in *Miranda* v. *Arizona*, 384 U. S. 436, which was announced on June 13, 1966. To do this would involve going beyond the limitation of the *Miranda* case, which was made in *Johnson* v. *New Jersey*, 384 U. S. 719, to trials begun at a date subsequent to the *Miranda* decision. This we decline to do. See *Commonwealth* v. *Morrissey, ante*, 505; *Commonwealth* v. *Rogers, post*, 522; *Commonwealth* v. *McGrath, post*, 534. That limitation precludes the impact of surprise upon the

trial of cases begun before June 13, 1966. We do not choose to restore the element of surprise to such cases. It would be unfair to the trial judge to expect him in ruling upon an apparently routine objection to evidence to overturn the well established rule of admissions and to substitute a novel requirement not expressed until later, which would restrict admissions made to enforcement officers to interviews conducted in the presence of counsel. See *Johnson* v. *New Jersey, supra,* 734.

In his brief the defendant bases his contention on this point solely upon the *Miranda* case as modifying *Commonwealth* v. *Gangi,* 243 Mass. 341. At the arguments in answer to a question his counsel sought to rely also upon *Escobedo* v. *Illinois,* 378 U. S. 478, decided on June 22, 1964, and made applicable to trials beginning on that date in *Johnson* v. *New Jersey,* 384 U. S. 719, 721. The admissions contended for here did not occur at a station house but on a public street at night at the scene of a fatal affray which was in the course of being broken up by the police. At the time the declarant was mortally wounded and within a few minutes of death. As to be expected, no lawyer was present who was prevented from talking with the defendant, who, so far as appears, never said he had a lawyer or asked to consult with one. The *Escobedo* case is not an authority for the defendant.

If the defendant was relying upon his being under arrest as an objection to any evidence or to the charge, fairness should have required that the trial judge be so informed. If this point had been made to him, the judge could have dealt with it directly and simply.

2. The defendant excepted to the admission in evidence of a tear gas cartridge and a jackknife removed from his person during a quick search by Officer Vellante on the street immediately after he was pulled from the car. No error appears. These items were part of the general circumstances in which the deceased and the defendant were found. It is not conclusive against admissibility that they did not cause the deceased's fatal injuries. See *Common-*

*wealth* v. *Simpson,* 300 Mass. 45, 56–57. There is lacking the prejudicial effect of the evidence held improperly admitted in *Commonwealth* v. *Valcourt,* 333 Mass. 706, 717–719.

3. The final assignment of error is to the denial of the defendant's motions for directed verdicts. He seeks to present the evidence as equivocal and as consistent with his innocence or guilt. This contention fails to allow for the weight the jury could give to the decedent's statements that he had been shot by the defendant. These statements could be found to have been made within the hearing of the defendant, who made no reply. These were admissible, as the defendant concedes. *Commonwealth* v. *Hackett,* 2 Allen, 136, 139–140. *Commonwealth* v. *Hampton, ante,* 447. It is not conclusive that the source or ownership of the revolver does not appear in the testimony. It should be noted, however, that the defendant was the owner and operator of the sedan on the floor of which were six live bullets for the revolver, five of them in a cigarette package.

The motions for directed verdicts were rightly denied.

*Judgments affirmed.*