PEOPLE *v.* HALL

OPINION OF THE COURT

1. CRIMINAL LAW—EVIDENCE—WEAPONS OR TOOLS—IDENTIFICATION —ADMISSIBILITY.

Weapons or tools found in an accused's possession at the time of his arrest may be introduced in evidence at his trial without proof that they were the very weapons or tools used by him in the crime with which he is charged, if the weapons or tools found might have been the ones that were used.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 5, 7, 8]  29 Am Jur 2d, Evidence § 623.
[2, 4]  21 Am Jur 2d, Criminal Law  §§ 533, 545.
[3]  50 Am Jur, Statutes § 384 *et seq.*
[6]  29 Am Jur 2d, Evidence § 298 *et seq.*
[9]  29 Am Jur 2d, Evidence §§ 251–256.

2. CRIMINAL LAW—SENTENCE—CREDIT—STATUTE.

Defendant sentenced for armed robbery was entitled to statutory credit on the sentence for time served in jail between his arrest and sentence, even though at the time of his arrest he had escaped from jail where he was serving time on another sentence (MCLA § 769.11b).

3. CRIMINAL LAW — STATUTES — SENTENCE CREDIT STATUTE — CON-STRUCTION.

The sentence credit statute is a remedial statute which should be liberally construed to effectuate its purpose (MCLA § 769-.11b).

4. CRIMINAL LAW—STATUTES—SENTENCE CREDIT STATUTE—PURPOSE.

Denying a defendant credit for time spent in jail from time of arrest to time of sentence nullifies the purpose of the sentence credit statute which was to insure that a defendant who has been either denied or has been unable to furnish bond serves a sentence no longer than one who has received the same sentence but who was released on bail pending trial (MCLA § 769.11b).

OPINION CONCURRING IN PART AND DISSENTING IN PART

LEVIN, P. J.

5. CRIMINAL LAW — TRIAL — EVIDENCE — WEAPONS — TOOLS — IDENTIFICATION—PREJUDICIAL EFFECT.

*Although weapons or tools found in the possession of a person arrested for a crime in which weapons or tools were used may be introduced in evidence at the accused's trial without proof that they were the same instruments used in the commission of the crime, the trial court, in its discretion, may, and in some cases is obliged to, exclude this evidence, otherwise admissible, because its probative value is overcome by the danger that its introduction will confuse, mislead, or prejudice the jury.*

6. EVIDENCE—SIMILAR OCCURRENCES—UNWARRANTED CONCLUSIONS.

*Evidence of similar occurrences in civil and criminal cases is generally excluded because of the danger that the trier of fact will draw unwarranted conclusions.*

7. ROBBERY—EVIDENCE—OWNERSHIP OF GUN—PROOF—PREJUDICIAL EFFECT.

*A loaded hand gun taken from a defendant when he was arrested for armed robbery should not have been admitted in evidence*

*at his subsequent trial where his ownership of that gun had no logical or rational connection to any other evidence in the case.*

8. ROBBERY—EVIDENCE—GUN OWNERSHIP—PREJUDICIAL EFFECT.

*Introduction of the fact of defendant's ownership of a hand gun served to confuse, mislead, and prejudice the jury against him where it was completely unrelated to any other evidence in the case and was not part of a composite of proofs from which his guilt of armed robbery could have been deduced.*

9. EVIDENCE—RELEVANCE—PREJUDICIAL IMPACT.

*Both the Court of Appeals and trial courts have a duty to balance the relevance of evidence (its probative value) against its diversionary and prejudicial impact.*

Appeal from Recorder's Court of Detroit, Frank G. Schemanske, J. Submitted Division 1 May 14, 1968, at Detroit. (Docket No. 3,902.) Decided August 28, 1969.

George N. Hall was convicted of robbery armed. Defendant appeals. Affirmed in part and reversed in part.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Barbara K. Hackett,* Assistant Prosecuting Attorney, for the people.

*Clifford F. Patterson,* for defendant.

Before: LEVIN, P. J., and HOLBROOK and BEER,* JJ.

HOLBROOK, J. The defendant was convicted of robbery armed.[1] At the trial there was introduced in evidence over defendant's objection a loaded hand

---

* Circuit Judge, sitting on the Court of Appeals by assignment.
[1] MCLA § 750.529 (Stat Ann 1969 Cum Supp § 28.797).

gun found on defendant when he was arrested two days after the crime was allegedly committed. The victim was asked whether he had a good look at the gun, to which he replied that "I didn't look too straight at it." When asked the color, he testified, "It was blue steel, I think it was. I don't know for sure."[2] He later testified that it was black. The victim was then asked whether it was a revolver, to which he replied that, "I couldn't tell you for sure. All I knew was that it was a gun."

The victim testified that the gun used by the defendant in holding him up was fired into the ground as a warning. An officer of the police scientific laboratory, who examined the gun found on the defendant a few days after the defendant's arrest, testified that he did not examine it to determine whether it had been fired.

Although the evidence did not establish that the gun found on the defendant at the time of his arrest was the gun used in committing the crime, it is a well-established rule that where weapons or tools were used to commit a crime, weapons or tools that might have been used to commit the crime found in the accused's possession at the time of arrest may be introduced without proof that they were the very weapons or tools in fact so used.[3]

The information charged that the crime was committed "with a dangerous weapon, to-wit: a *.25 cal. Astra blue steel automatic*-pistol, *serial #753425.*" (Emphasis supplied.) The serial number so stated was the serial number of the gun found on the defendant at the time of his arrest. The people were

---

[2] Parenthetically, the information referred to the gun found on the defendant as a .25 caliber Astra blue steel automatic-pistol, serial #753425.

[3] 2 Wigmore on Evidence, § 238; 1 Wharton, Criminal Evidence, § 203; (Michigan citations) *People* v. *Cona* (1914), 180 Mich 641, 652; *People* v. *Harris* (1942), 300 Mich 463; *People* v. *Ritholz* (1960), 359 Mich 539.

unable to prove that the gun found on the defendant was in fact the gun used in committing the crime. However, in our opinion, all the emphasized quoted words other than the word "pistol" are surplusage and may be ignored.[4]

There was sufficient evidence to justify a jury verdict that the defendant was guilty of the crime charged beyond a reasonable doubt.

The trial court erred in failing to give the defendant specific credit against the sentence of 3 to 15 years in prison for the time he served in jail between the time of his arrest and the time of sentencing, as provided for in the applicable statute:

"Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing." MCLA § 769.11b (Stat Ann 1969 Cum Supp § 28-.1083[2]).

At the time of defendant's arrest he had escaped from the Detroit House of Correction where he was serving a state prison sentence. At the time of his arrest and at subsequent appearances before the court, bail was set at $5,000 with two sureties. Defendant did not furnish bail and he was detained in the Wayne county jail from the time of his arraignment on the warrant on September 10, 1966, through the date of trial, March 20, 1967, and the sentencing on April 5, 1967. The total period of his detention for which he claims credit is 207 days.

After oral argument in our Court the people furnished us with affidavits stating that the depart-

---

4 "All unnecessary allegations shall be rejected as surplusage." MCLA § 767.47 (Stat Ann 1954 Rev § 28.987).

ment of corrections has given the defendant credit for the 207 days served in the Wayne county jail against sentences still not fully served imposed upon the defendant following earlier convictions for other offenses.[5]

In *People v. Chattaway* (1969), 18 Mich App 538, our Court observed that in Michigan, with exceptions not here relevant, a sentence may not be imposed to commence upon completion or expiration of another sentence (*In re Carey* [1964], 372 Mich 378, 380). It was said that the sentence credit statute avoids unnecessary chilling of exercise of the right to trial by requiring adjustment of the sentence of one denied or unable to furnish bond so that he spends no longer in jail than one receiving the same sentence who is released on bail pending trial.

This statute is remedial and has been liberally construed by our Court so as to effectuate its purpose. *People v. Havey* (1968), 11 Mich App 69; *Booker v. Judge of Recorder's Court* (1967), 7 Mich App 705, 707; *People v. Grandahl* (1969), 16 Mich App 221, 224, 225. In *Chattaway* our Court stated:

---

[5] Actually, the defendant received credit against his old sentence for 209 days, including the two days between his arrest and arraignment. No claim has been made on this appeal by the defendant that he is entitled to credit for those two days against the sentence imposed on account of the conviction here on appeal.

In response to the affidavits furnished by the people the defendant submitted a letter from the director of the department of corrections addressed to the defendant's attorney stating: "As of the date of his [Hall's] arrest [on September 8, 1966], time resumed running on the attempted breaking and entering sentence even though he was not returned to our jurisdiction until April 5, 1967. We have a copy of a letter in our file from Judge Schemanske to Mr. Hall dated June 2, 1967, stating that time credit for the time served in the Wayne county jail while waiting disposition on the robbery armed charge was not allowed because Mr. Hall was a fugitive and escapee from the State Prison of Southern Michigan. We believe that under the statute (MCLA § 769.11b [Stat Ann 1969 Cum Supp § 28.1083(2)] Mr. Hall should be granted this credit against the armed robbery sentence. We cannot, of course, apply that credit without an order from the court."

"Nor is there anything in the statute which makes relevant the fact that the consequence of granting credit in this case would be to give the plaintiff the benefit of the credit against the sentences imposed in both cases. In this connection we note that the sentence credit which the plaintiff obtained in the other case was of illusory benefit to him; since both sentences run concurrently, the shorter sentence in the other case was in practical effect absorbed by the longer sentence imposed in this case. If the plaintiff can only have credit against one sentence (as the people contend), surely he should receive the credit against the longer sentence imposed in this case, where it would be of value to him, rather than against the shorter sentence imposed in the other case where the credit was of no value to him."

We adopt this reasoning. The fact that Hall received credit against his old sentences does not negate his right to credit against the present armed robbery sentence. Since the armed robbery sentence is for a longer term than the unserved portions of the old sentences, to allow the credit against the old sentences and not the new would, in the light of the concurrency of Michigan sentences, be to confer an illusory benefit. Hall is entitled to credit against the armed robbery sentence for the 207 days.

We see no need for remanding for resentence. Pursuant to the provisions of GCR 1963, 820.1(7) it is ordered that the defendant's sentence be amended specifically to grant him credit for the 207 day period.

Affirmed in part and reversed in part.

BEER, J. concurred.

LEVIN, P. J. (*concurring in part and dissenting in part*). The defendant was convicted of armed robbery.[1] At the trial a loaded handgun, found

---

[1] MCLA § 750.529 (Stat Ann 1968 Cum Supp § 28.797).

during a search of the defendant when he was arrested two days after the crime was committed, was introduced in evidence over his attorney's objection. The victim identified the defendant as the robber but could not identify the gun.[2]

There was no evidence that the gun found on the defendant was used to commit the crime. Nevertheless, I agree with my colleagues that it is well established that where weapons or tools are used to commit a crime, weapons or tools which might have been used to commit it, found in the accused's possession, may be introduced without proof that they were the very weapons or tools which, in fact, were used in its commission.[3] It is also well established,[4]

---

[2] At the trial the victim was asked whether he had a good look at the gun, to which he replied that "I didn't look too straight at it." When asked the color, he testified, "It was blue steel, I think it was. I don't know for sure." He later testified that it was black. The victim was then asked whether it was a revolver, to which he replied that, "I couldn't tell you for sure. * * * All you know is it is a gun."

The victim testified that the gun used by the defendant in holding him up was fired into the ground as a warning. An officer of the police scientific laboratory who examined the gun found on the defendant a few days after his arrest testified that he did not examine it to determine whether it had been recently fired.

[3] 1 Wharton, Criminal Evidence, § 203. But see 1 Gillespie, Michigan Criminal Law & Procedure, § 461, p 572; *State* v. *Kehr* (1907), 133 Iowa 35 (110 NW 149); *State* v. *Crawford* (1922), 60 Utah 6 (206 P 717). See discussion in 22A CJS, Criminal Law, § 712, pp 956–969.

[4] See following authorities:

"When the risk of confusion is so great as to upset the balance of advantage, the evidence goes out." *Shepard* v. *United States* (1933), 290 US 96, 104 (54 S Ct 22, 78 L Ed 196).

"It is an accepted rule that where the value of evidence for a legitimate purpose is slight and the jury's probable misuse of that evidence for an incompetent purpose is great, the evidence may be properly excluded altogether." *Caulder* v. *Commonwealth* (Ky, 1960), 339 SW2d 644, 646.

"This is a situation where the policy of protecting a defendant from undue prejudice conflicts with the rule of logical relevance, and a proper determination as to which should prevail rests in the sound discretion of the trial court, and not merely on whether the evidence comes within certain categories which constitute exceptions to the rule of exclusion." *State* v. *Goebel* (1950), 36 Wash 2d 367, 379 (218 P2d 300).

however, that the trial court may, in the exercise of
its discretion, and, in some cases is obliged, to ex-
clude evidence otherwise admissible because its pro-
bative value is overcome by the danger that intro-
duction of the evidence will confuse, mislead or
prejudice the jury.[5]

The fact that the defendant Hall owned a gun was
relevant.   It is ordinarily a reasonable inference,
one which the trier of fact may properly draw, that
one who owns a gun on a given date owned it two
days before that date.   If the jury drew that in-
ference it could properly conclude that Hall had
the capacity to commit the crime of which he was
convicted.

---

"It is always within the competence of the trial judge to ex-
clude evidence, otherwise admissible, when he is convinced that it
will create a danger of prejudice which outweighs its probative
value." *Kilarjian* v. *Horvath* (CA 2, 1967), 379 F2d 547, 548.

Also see *United States* v. *88 Cases, More or Less, Containing
Bireley's Orange Beverage* (CA 3, 1951), 187 F2d 967, 975; *United
States* v. *Phillips* (CA 7, 1968), 401 F2d 301, 305, 306.

5 The trial judge refused to consider the objection on the ground
on which it was made, namely, that introduction of the gun would
be prejudicial.   The judge stated that the jury was entitled to see
the gun so that it would be aware of the "circumstances of the arrest."
However, in *People* v. *Courtney* (1913), 178 Mich 137, 153, 154, the
Michigan Supreme Court held that burglary tools, found in the
accused's possession when arrested 3–1/2 years after the offense was
committed, could not be considered by the jury in deciding the
question of whether the offense was committed by the accused.

Since the trial judge did not exercise his discretion but, rather,
proceeded on the assumption that he did not enjoy any discretion in
the matter, we cannot review for possible abuse of discretion his
ruling that the gun was admissible and must of necessity pass upon
the defendant's objection to the admissibility of this evidence un-
aided by any statement from the trial judge stating his appraisal
of the factors to be considered in ruling on an objection of this
kind.   See *State* v. *Thompson* (1961), 228 Or 496 (364 P2d 783),
discussed *infra*, where, although recognizing that "in most instances
the admissibility of evidence of this character must be left to the
discretion of the trial court," in a particular case the appellate court
may substitute its judgment.   The proposed Federal rules of evidence
(see footnote 8) eliminate discretion and make mandatory the ex-
clusion of evidence whose probative value is substantially outweighed
by the danger of unfair prejudice, of confusing the issues or of mis-
leading the jury.

The defendant's objection to the admission of the gun was not put on the ground that it was not relevant. The defendant asserted, rather, that its introduction was prejudicial and, therefore, even though relevant, the gun should not have been admitted into evidence.

The crux of the people's case was the identification testimony of the taxicab driver who was the victim of the armed robbery. The introduction of the gun did not serve in any way to aid the jury in properly evaluating the taxicab driver's identification testimony.

Possession of a handgun is regarded by a significant portion of our citizens as reprehensible. Thus, there was considerable risk that the jury would give undue weight to the fact that the defendant Hall owned a gun and on that basis resolve against him any doubt regarding the identification testimony. Confronted with such a situation, our duty and that of the trial judge is to balance the relevance of the evidence (its probative value) against its diversionary and prejudicial impact.

Analogous on its facts is *State* v. *Thompson* (1961), 228 Or 496 (364 P2d 783). The defendant in that case was arrested two months after the commission of the armed robbery at his home which was situated 75 miles from the scene of the crime. The gun was found on a shelf in a closet in the defendant's bedroom. The defendant was identified by the victim as the robber. The analysis of the Oregon Supreme Court in holding that the trial judge in that case should not have allowed the gun to have been introduced in evidence is persuasive (pp 501, 502):

"Admittedly, cases involving weapons found on or about a defendant when arrested and which cannot be identified as the actual weapon with which

the crime charged had been committed present difficult questions of admissibility. In the absence of any direct or indirect evidence of identity or similarity it may become a problem of the time and place where the accused is apprehended and weapons found in respect to the time and place of the crime committed, or, it may be that evidence of some unique character of the weapon which might have been used to commit the crime in respect to the weapon found upon one accused of the crime would render it admissible. Thus a gun taken from the hand of a person found standing over a murdered victim would be admissible even though no other identification was available. Or in the more usual situation when an accused has been observed secreting a weapon or attempting to throw away a weapon in flight the connection between the weapon and the crime is definite.

"At the other extreme is a case like the one now under consideration. The accused was arrested in a normal home atmosphere. The crime was committed two months before at a place about 75 miles distant. The gun found and admitted was not unique or distinguishable from the other .22-caliber revolvers that could probably have been found in many homes within Klamath Falls, or any other city, at the time of defendant's arrest. There was no testimony that the gun was similar to the gun that had been seen by the robbery victim. There was nothing to tie this revolver to the crime alleged other than it was found in the home of the man charged with committing the crime.

"In most instances the admissibility of evidence of this character must be left to the discretion of the trial court. It would be impossible to narrowly delineate the exact limits of admissibility within the varying degrees of connection that could exist. Imagination can devise innumerable hypothetical cases which defy solution by any hard rule. The question must be resolved within the facts of each case. In this particular case, however, we think the

prejudicial character of the evidence outweighed its
probative value."

The reasoning of the Oregon Supreme Court is
apposite even though the defendant in the cited case
was arrested two months after the crime was com-
mitted while in this case the defendant Hall was ar-
rested two days after commission of the crime. In
both this case and the cited case the accused was ap-
prehended at a time which was not contemporaneous
with the commission of the crime[6] and the connec-
tion to the crime of the gun found in the accused's
possession was largely conjectural.[7]

The Iowa Supreme Court has also had occasion
to balance the value of relevant evidence as a con-
tribution to the solution of the fact issue against
the danger of its diversionary or prejudicial effect
upon the trier of fact. *State* v. *Slauson* (1958), 249
Iowa 755 (88 NW2d 806); *State* v. *Wallace* (1966),
259 Iowa 765 (145 NW2d 615). *Cf. State* v. *Kehr*
(1907), 133 Iowa 35 (110 NW 149). In the *Wallace
Case* the court observed (p 771):

"Evidence which has no tendency or only a slight
tendency to establish guilt or innocence of an ac-

---

[6] Had the defendant been apprehended near the scene of the
crime shortly after its commission and had a gun been found on
his person, the probative value of such evidence might well be
regarded sufficient to allow admission of the gun even though the
people sought to prove the defendant's guilt by identification testi-
mony. See, *e.g., Commonwealth* v. *McCambridge* (1967) 351 Mass
516 (222 NE2d 763); *Chase* v. *State* (Okla Crim App, 1966), 415
P2d 203; *People* v. *Pittman* (1963) 28 Ill 2d 100 (190 NE2d 802).
See footnote 14.

[7] In the following cases the weapon or tool used in the commission
of the crime was unusual: *People* v. *Jones* (1961), 22 Ill 2d 592 (177
NE2d 112) (chrome-plated, long-barreled revolver); *People* v. *Pinelli*
(1965), 24 App Div 2d 1023 (265 NYS2d 918) (gun described as
large, steel gray, like a Luger).

In *People* v. *Parker* (1967), 8 Mich App 414, 417, the evidence
showed that one of the bullets found at the scene of the shooting
had been fired by the revolver in defendant's possession immediately
after the assault. Similarly, see *People* v. *Keep* (1900), 123 Mich
231 (identifying articles).

cused, or which if effective at all could serve only to prejudice, mislead or excite the passions of a jury, should not be admitted."

Recently in *People* v. *Turner* (1969), 17 Mich App 123, our Court held that a trial judge abused his discretion in allowing the introduction in a murder case of a particularly gruesome autopsy photograph of the victim. In so holding we balanced the admitted relevancy of the evidence against its prejudicial impact and concluded that the "photograph of the skull was not of such essential evidentiary value that its need clearly outweighed the likelihood that it would inflame the minds and passions of the jurors." *Cf. People* v. *Auerbach* (1913), 176 Mich 23, 39, 41; *People* v. *Besonen* (1966), 4 Mich App 131, 139; *People* v. *Nichols* (1954), 341 Mich 311, 330–332; *People* v. *Brocato* (1969), 17 Mich App 277, 302; *People* v. *Eldridge* (1969), 17 Mich App 306, 313; *Taylor* v. *Walter* (1968), 15 Mich App 361, 364.

Professor McCormick, in his treatise of the Law of Evidence, succinctly stated the issue (§ 152, p 319):

"Relevance is not always enough. There may remain the question, is its value worth what it costs?"[8]

---

[8] Rule 303, Model Code of Evidence—Discretion of Judge to Exclude Admissible Evidence:

"(1) The judge may in his discretion exclude evidence if he finds that its probative value is outweighed by the risk that its admission will

"(a) necessitate undue consumption of time, or

"(b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or

"(c) unfairly surprise a party who has not had reasonable ground to anticipate that such evidence would be offered.

"(2) All rules stating evidence to be admissible are subject to this rule unless the contrary is expressly stated."

Similarly, see Rule 45, Uniform Rules of Evidence Act proposed by National Council of Commissioners on Uniform State Laws, 9A ULA, p 624.

Proposed Rule 4–03, Rules of Evidence for the United States District Courts and Magistrates (preliminary draft, March 1969) reads:

Where the people's case is based largely or entirely on circumstantial evidence,[9] unlike the people's case here, the probative value of the evidence will generally outweigh the danger of confusing the issues or prejudicing or misleading the jury. For, in such a case, the jury needs to know that the defendant had the capacity to commit the crime. In the three Michigan cases of which I am aware, where evidence of weapons or tools found in the accused person's possession was held admissible to show capacity to commit the crime, the case against the accused was largely or entirely circumstantial. *People* v. *Courtney* (1913), 178 Mich 137, 153; *People* v. *Lahnala* (1916), 193 Mich 144; and *People* v. *Winney* (1917), 196 Mich 347, 365.[10]

Carrying a concealed weapon is a crime.[11] Although the jurors were not told in so many words that the defendant had committed that crime, most citizens know and, indeed, are required by the law to know, that carrying a concealed weapon is a

"(a) Exclusion Mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

"(b) Exclusion Discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

9 Although it has been suggested (see footnote 8) that any evidence, direct or circumstantial, may be excluded if its value is exceeded by its cost, Professor McCormick writes that "seemingly at common law" the discretionary balancing process was limited to circumstantial evidence. McCormick, Law of Evidence, § 152, p 319, n 25.

10 I also note that in each of these cases the accused person was shown to have been in possession of the weapon or tools before as well as after the commission of the crime with which he was charged. In *Lahnala* the gun was owned by the defendant before the crime was committed. In *Winney* the defendant admitted stealing the gun the night before the victim was murdered. In both cases the guns were of the same caliber as bullets found at the scene. In *Courtney* a satchel resembling one seen in the accused's possession before the crime was committed was seized at the same time the burglary tools were seized.

11 MCLA § 750.227 (Stat Ann 1962 Rev § 28.424).

crime. In a very real sense then, what the people were allowed to prove in this case was that the defendant's conduct on another occasion was the conduct of a bad man.

The law generally[12] excludes evidence of similar occurrences and transactions in both civil and criminal cases, not because the evidence would be irrelevant, but because of the danger that the trier of fact will conclude that "with all that smoke there must be a fire."

This general policy is unnecessarily eroded by allowing the kind of evidence that was used in this case. Experience tells us that when in doubt, and there may very well have been reasonable doubt of the defendant's guilt in this case considering the conflict in the testimony and the circumstances, the jury may resolve that doubt on the basis of the extraneous evidence put before it that the defendant was a bad man.

The people did not seek to build their case against Hall upon circumstantial evidence (*e.g.*, possession of weapons or other tools with which to commit the crime, and of identifying clothing[13] and of the stolen goods, etc.). The relevance of the fact that the defendant Hall owned a gun was a theoretical relevance unrelated to the people's theory in this case. The fact that the defendant owned a gun was not tied in to any other proofs. The people could not have prevailed by proving only that the defendant

---

[12] 4 Callaghan's Michigan Pleading & Practice, § 36.205, *et seq.*, p 50, *et seq.;* 29 Am Jur 2d, Evidence, § 298, *et seq.*, p 342, *et seq.* There are, of course, a large number of exceptions to the stated general principle as appears in the texts just cited and McCormick, Law of Evidence, chs 17 and 18. See MCLA § 768.27 (Stat Ann 1954 Rev § 28.1050).

[13] As to the admissibility of wearing apparel, see 22A CJS Criminal Law, § 713, pp 969–979.

owned a gun and thus had the capacity to commit the crime.[14]

The defendant's ownership of a gun had no logical or rational connection to any other evidence in the case. That fact was not part of a composite of proofs from which the defendant's guilt could have been deduced. The fact that the defendant owned a gun was left suspended before the jury, completely unrelated to any other evidence in the case. It served but one purpose, to confuse and mislead the jury, to divert it from the central issue of identity, to prejudice the jury against the defendant, to resolve any doubts that the jury entertained regarding the identification testimony on the basis of the fact, legally irrelevant, that the defendant was a bad man.[15]

Having in mind the people's theory, the minimal relevance of the gun, the diversion from the predominant issue—identification—and the prejudice to the defendant accomplished by introduction of the gun, I am convinced that on the facts of this case the gun should not have been introduced.

I agree with my colleagues' disposition of the sentence credit issue as set forth in Judge Holbrook's opinion.

---

[14] I do not mean to be understood as saying that when the people seek to prove their case through identification testimony they may not also offer circumstantial evidence. If, for example, a defendant is found shortly after the commission of a crime near the scene with a gun that might have been used to commit it the gun may be admissible (see footnote 6). In such a case, the gun is not the only circumstantial evidence; the defendant's presence near the scene of the crime is other circumstantial evidence. Circumstantial evidence that labels the defendant as a bad man (*e.g.*, guns, burglar tools) should not, however, be offered unless the people can tie it in with other substantial circumstantial evidence. Red herrings should not be dragged before the jury.

[15] It has been said that "in determining a dispute concerning the relevancy of proffered evidence, the question to be resolved is whether there is a logical or rational connection between the fact which is sought to be proved and a matter of fact which has been made an issue in the case." 1 Jones on Evidence (5th ed), § 153, pp 271, 272.

## APPENDIX

The problem of balancing the probative value of evidence with the danger of undue prejudice, confusion of issues, or misleading the jury is presented whenever a witness (and particularly when a defendant) with a criminal record takes the stand and it is sought to question him regarding his criminal record ostensibly for the purpose of enabling the jury to judge his credibility as a witness.

It is safe to say that the use of past criminal record to attack credibility has become so customary that it is rarely challenged. Recently, however, our Court in affirming a jury verdict of no cause of action in a personal injury case held that the trial judge did not abuse his discretion in refusing to allow cross-examination of the defendant concerning prior traffic violation convictions. *Taylor* v. *Walter* (1968), 15 Mich App 361, leave to appeal granted 382 Mich 773. We relied on *Zimmerman* v. *Goldberg* (1936), 277 Mich 134, and also observed (p 364):

"Michigan follows the rule suggested in Rule 303, Model Code of Evidence which permits a trial judge in his discretion to exclude admissible evidence if he finds that its probative value is outweighed by the risk that its admission will create substantial danger of undue prejudice. See McCormick, Evidence, § 42, pp 87–94, and § 152, pp 319–321."

The relevant statute provides:

"No person shall be excluded from giving evidence on any matter, civil or criminal, by reason of crime * * * ; but such * * * conviction of crime may be shown for the purpose of drawing in question the credibility of such witness, except as is hereinafter provided." MCLA § 600.2158 (Stat Ann 1962 Rev § 27A.2158).

In *Luck* v. *United States* (1965), 121 App DC 151 (348 F2d 763), the United States Court of Appeals for the District of Columbia, in a two-to-one decision, held, under a statute reading fundamentally as does Michigan's, that a trial judge may, in the exercise of discretion, exclude evidence of prior crimes. In so holding the court emphasized that the statute (p 156, 348 F2d 768):

"says, in effect that the conviction 'may,' as opposed to 'shall,' be admitted; and we think the choice of words in this instance is significant. The trial court is not *required* to allow impeachment by prior conviction every time a defendant takes the stand in his own defense. The statute, in our view, leaves room for the operation of a sound judicial discretion to play upon the circumstances as they unfold in a particular case. There may well be cases where the trial judge might think that the cause of truth would be helped more by letting the jury hear the defendant's story than by the defendant's foregoing that opportunity because of the fear of prejudice founded upon a prior conviction. There may well be other cases where the trial judge believes the prejudicial effect of impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility. This last is, of course, a standard which trial judges apply every day in other contexts; and we think it has both utility and applicability in this field." (Emphasis by the Court.)[16]

---

[16] An extensive jurisprudence has been developed by the United States Court of Appeals for the District of Columbia regarding the *Luck* rule. In *Jones* v. *United States* (1968), 131 App DC 88 (402 F2d 639), and *Barber* v. *United States* (1968), 129 App DC 193 (392 F2d 517), the trial judge was found to have abused his discretion in admitting evidence of the defendant's prior conviction record. No abuse of discretion was found in *Evans* v. *United States* (1968), 130 App DC 114 (397 F2d 675). Compare *Brown* v. *United States* (1966), 125 App DC 220 (370 F2d 242); *Covington* v. *United States* (1966), 125 App DC 224 (370 F2d 246); *Gordon* v. *United States* (1967), 127 App DC 343 (383 F2d 936); *Hood* v. *United States* (1966), 125 App DC 16 (365 F2d 949); *Lewis* v. *United States* (1967), 127 App DC 115 (381 F2d 894); *Williams* v. *United States* (1968), 129 App DC 332 (394 F2d 957).

In *State* v. *Hawthorne* (1967), 49 NJ 130 (228 A2d 682), the Supreme Court of New Jersey construed its statute, similar to both our statute and the statute construed in *Luck,* and, after careful consideration of the *Luck* decision, refused to adopt it. The Court concluded that in using the word "may" the New Jersey legislature intended to authorize any litigant at his option to introduce evidence of any witness' past conviction record and, thus, a trial court enjoys no discretion to exclude such evidence.

Both the *Luck* and the *Hawthorne* Courts regarded their task to be the determination of the correct construction of a statute and did not regard themselves as possessing any power independently of the statute to declare whether such evidence is admissible. In contrast, the Michigan Supreme Court in *Perin* v. *Peuler* (On Rehearing, 1964), 373 Mich 531, held that it had the power to declare without further force a statute making inadmissible evidence of a conviction of a motor vehicle violation; the Court stated (p 541):

"The function of enacting and amending judicial rules of practice and procedure has been committed exclusively to this Court (Const 1908, art 7, § 5; Const 1963, art 6, § 5); a function with which the legislature may not meddle or interfere save as the Court may acquiesce and adopt for retention at judicial will."

Recently, in *People* v. *Eldridge* (1969), 17 Mich App 306, our Court, citing *Luck,* reversed a defendant's conviction of statutory rape for, among other reasons, the prosecutor's questioning of an alleged *res gestae* witness regarding his conviction of taking indecent liberties with the girl who complained against the defendant Eldridge.

In *Eldridge* we referred to *Burg* v. *United States* (CA 9, 1969), 406 F2d 235, where the defendant's

earlier conviction for theft was held admissible in his trial for bank robbery. One judge adhered to the orthodox rule that such evidence is always admissible for the purpose of impeaching a witness' credibility even though he is the defendant. Another judge adopted the approach of the *Luck* Court but held that the trial judge correctly exercised his discretion. The third judge found it unnecessary to express an opinion. See, also, *United States* v. *Palumbo* (CA 2, 1968), 401 F2d 270; *United States* v. *Hildreth* (CA 4, 1967), 387 F2d 328 (*dictum*); *State* v. *Dunn* (1967), 91 Idaho 870, 879 (434 P2d 88, 97) (Spear, J., *concurring*).

Commentators generally are critical of rules allowing evidence of prior conviction record to be admitted to impeach a defendant when he takes the stand as a witness. Professor McCormick in his work on Evidence, § 43, points out that the present rule is an historical accident. See, also, Note, Other Crimes Evidence at Trial: of Balancing and Other Matters, 70 Yale L J 763, pp 774–778 (1961); Note, Constitutional Problems Inherent in the Admissibility of Prior Record Conviction Evidence for the Purpose of Impeaching the Credibility of the Defendant Witness, 37 Cinci L Rev 168 (1968).

Both the Uniform Rules of Evidence Act (Rule 21; 9A ULA p 607) and the Model Code of Evidence (Rule 106), would eliminate the use of such evidence against a defendant in a criminal case unless he first introduces evidence admissible solely for the purpose of supporting his credibility and then would limit such evidence to convictions of a crime involving "dishonesty or false statement."

It has been suggested that the present rule unconstitutionally chills a defendant's right to take the stand in his own defense[17] and that it "effects an

---

[17] See Note, 37 Cinci L Rev 168 (1968).

anomalous disinction between defendants with and those without a criminal record in the exercise of the right to testify in their own behalf."[18]

A defendant in a criminal case has a constitutional right to take the stand in his own behalf. *Cf. In re Oliver* (1948), 333 US 257, 273 (68 S Ct 499, 507, 92 L Ed 682, 694); *MacKenna* v. *Ellis* (CA 5, 1960), 280 F2d 592, 595; *Ferguson* v. *Georgia* (1961), 365 US 570 (81 S Ct 756, 5 L Ed 2d 783). Cases holding unconstitutional rules that needlessly penalize assertion of constitutional rights include *United States* v. *Jackson* (1968), 390 US 570, 583 (88 S Ct 1209, 20 L Ed 2d 138); *Simmons* v. *United States* (1968), 390 US 377, 394 (88 S Ct 967, 19 L Ed 2d 1247); *Groshart* v. *United States* (CA 9, 1968), 392 F2d 172, 180; *People* v. *Luna* (1967), 37 Ill 2d 299, 308 (226 NE2d 586, 590); *Griffin* v. *California* (1965), 380 US 609, 614 (85 S Ct 1229, 14 L Ed 2d 106).

[18] See Note, 70 Yale L J 763, 776 (1968).