# IN THE COURT OF APPEALS OF IOWA

No. 19-1990
Filed April 14, 2021

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**SKYLAR DWAYNE STARK,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Lee (South) County, Michael J. Schilling,

Judge.


        Skylar Stark appeals his conviction for the crimes of burglary in the first degree

and robbery in the first degree. **AFFIRMED**.


        Peter Stiefel, Victor, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.


        Considered by Vaitheswaran, P.J., and Tabor and Schumacher, JJ.

**SCHUMACHER, Judge**

Skylar Stark appeals his conviction for the crimes of burglary in the first degree and robbery in the first degree, arguing the district court erred in denying his motion to sever a possession of firearm or offensive weapon by felon charge and admitting certain evidence. Finding the court did not abuse its discretion, we affirm.

## I.     Background Facts & Proceedings

A reasonable jury could find the following facts from the evidence presented. In late 2018, Greg Godwin and a woman he knew as "Mariah" communicated through a website called "What's Your Price."[1] Godwin offered to pay the woman $200 to meet, and she accepted. Mariah was a fictitious name. In this opinion, she is referenced by her initials, S.N. On an agreed-upon date and time, Godwin picked up S.N., and they drove to a hotel. On this occasion, the two "just had a conversation." On a subsequent occasion, they met at the same hotel and had sex. The two had no further contact for approximately three months.

On March 23, 2019, Godwin received a text message from the phone number of S.N., inquiring if he would like to meet again. Godwin agreed. Godwin was asked if he would pay $400 if S.N would bring a friend along. A negotiated price was reached at $300. Godwin rented a room at a local hotel, placed his wallet on the dresser, and texted his room number to S.N.'s phone. Unbeknownst to Godwin, it was S.N.'s boyfriend, Skylar Stark, who had initiated the contact and negotiated the price.[2] Shortly after texting

---

[1] Several months earlier, the two had communicated through a website called "Seeking Arrangements." However, they lost touch after agreeing to meet and "Mariah" did not follow through with the meeting.

[2] Stark discovered the previous contacts between S.N. and Godwin after he went through S.N.'s phone.

the room number, Godwin heard a knock at the door. Godwin cracked the door, and Stark "forced his way in brandishing a knife."

Once in the room, Stark pointed a "stainless steel. . . or chrome. . . large-caliber revolver" at Godwin. Godwin observed Stark was also carrying a collapsible baton. Godwin asked Stark who he was and Stark responded that he was S.N.'s boyfriend, adding, "You know her as Mariah." Stark interrogated Godwin, asking Godwin whether his wife knew what he was doing and whether he thought what he was doing was morally acceptable. Godwin, with Stark's gun pointed at him, pleaded with Stark and stated he was just trying to help S.N.

Stark discovered Godwin's wallet on the dresser and rummaged through it, pulling out credit cards and $68. Stark then demanded the agreed-upon sum of $300. Godwin directed him to a second compartment in the wallet where Stark found three one-hundred-dollar bills. Stark, apparently satisfied with the sum, forcibly collapsed the baton on the dresser and stated, "I'm not going to hurt you after all." Stark instructed Godwin to stay in the room and Stark exited. Through the hotel room window, Godwin observed a truck leaving the hotel parking lot. A few minutes later, Godwin also left the hotel. Godwin called the police within an hour after leaving the hotel and reported what occurred at the hotel.

On May 21, the State charged Stark with the crimes of burglary in the first degree, in violation of Iowa Code § 713.3(3) (2018), and robbery in the first degree, in violation of Iowa Code § 711.2. The State later amended the trial information to add a charge of possession of a firearm or offensive weapon by a felon in violation of Iowa Code section 724.26(1).

Prior to trial, Stark filed a motion to sever the possession of a firearm or offensive weapon by a felon charge from the burglary and robbery charges. The State filed a resistance, and the trial court held a hearing on the motion. The district court denied Stark's motion, and the matter proceeded to jury trial. At trial, the State presented evidence in support of the possession of a firearm or offensive weapon by a felon charge. However, after the State's case-in-chief, the district court dismissed the charge, finding the State failed to meet its burden on the charge. The jury found Stark guilty of burglary in the first degree and robbery in the first degree. Stark appeals his convictions.

## II. Discussion

### A. Severance

First, Stark argues the district court erred in denying his motion to sever the possession of a firearm or offensive weapon by a felon charge from his burglary and robbery charges. Iowa Rule of Criminal Procedure 2.6(1) governs the severance or joinder of multiple alleged offenses in one proceeding and states,

> Two or more indictable public offenses which arise from the same transaction or occurrence or from two or more transactions or occurrences constituting parts of a common scheme or plan, when alleged and prosecuted contemporaneously, shall be alleged and prosecuted as separate counts in a single complaint, information or indictment, unless, for good cause shown, the trial court in its discretion determines otherwise.

The purpose of rule 2.6(1) is "to achieve 'judicial economy through the joinder of related offenses.'" *State v. Owens*, 635 N.W.2d 478, 482 (Iowa 2001) (quoting *State v. Lam*, 391 N.W.2d 245, 249 (Iowa 1986)). Rule 2.6(1) presumes joinder and instructs that where multiple offenses arise from the same transaction or occurrence, they *shall be* tried together *unless* the district court finds good cause otherwise. Iowa R. Crim. P. 2.6(1) (emphasis added). A defendant seeking to sever one of his charges has the burden of

proving to the district court that "any prejudice resulting to him from a joint trial outweighs the State's interest in judicial economy." *Owens*, 635 N.W.2d at 482.

If the district court finds the defendant has met this burden, it may find good cause to sever his charges. *State v. Oetken*, 613 N.W.2d 679, 689 (Iowa 2000); Iowa R. Crim. P. 2.6(1). We review a district court's refusal to sever a charge for an abuse of discretion. *State v. Romer*, 832 N.W.2d 169, 181 (Iowa 2013). "'To prove the district court abused its discretion in refusing to sever charges, [the defendant] bears the burden of showing prejudice resulting from joinder outweighed the State's interest in judicial economy.'" *Id.* (quoting *State v. Elston*, 735 N.W.2d 196, 199 (Iowa 2007)).

Through his motion and at the hearing on his motion to sever his possession of a firearm or offensive weapon by a felon charge, Stark argued that joinder would invite propensity and hearing the charges together would be more prejudicial than probative to the jury. The State filed a resistance, argued the joinder of a felon in possession charge was permissible under Owens, and noted the State's interest in trying the charges together.

The district court issued an order denying Stark's motion, finding the three charged counts arose out of the same transaction or occurrence, and Stark had the burden of showing the threat of prejudice outweighed the State's interest in judicial economy. On the side of judicial economy, the court noted the facts needed to prove possession of a dangerous weapon under the robbery and burglary charges were also needed to prove the felon in possession of a firearm charge. Addressing the threat of prejudice, the court found Stark's argument concerning propensity lacked merit under *Owens* and he had failed to establish prejudice requiring severance. Finally, the court stated its intention to

give a limiting instruction to the jury and would not allow the State to reveal the nature of Stark's underlying felony.

On appeal, Stark attacks the district court's decision by distinguishing the facts of his case and that of *Owens*. In *Owens*, the defendant was convicted of being a felon in possession of a firearm, among other drug-related crimes. 635 N.W.2d at 478. On appeal to the supreme court, Owens sought to establish a per se rule "compelling severance whenever the State charges a felon with being in possession of weapons along with other related charges," arguing that joinder of a felon in possession charge, by its very nature, "inject[s] unfairness into [the jury's] deliberations." *See id.* at 482. The supreme court declined to adopt such a rule, choosing rather to preserve the district court's discretion and reiterating that it is the role of the district court to "strik[e] a proper balance between the antipodal themes of ensuring [a] defendant a fair trial and preserving judicial efficiency." *Id.* (internal quotations and citations omitted). In its determination, the supreme court highlighted the factors mitigating unfair prejudice, stating,

> The evidence concerning Owens' status as a felon was imparted in a one-sentence stipulation read by the prosecutor at the close of the State's case. The specific felony was not identified, nor were facts concerning the crime detailed for the jury. Moreover, the court gave a specific limiting instruction telling the jury it could only consider the stipulation in relation to the felon-in-possession charge.

*Id.* at 482–83. The court also found that the "State's usual interest in judicial economy was increased," noting, "Owens' drug-possession charge also involved proof that he was in immediate possession or control of a firearm. Had the trials been severed, the State would have been required to reintroduce, for a second jury, identical evidence." *See id.* at 483.

Stark argues for reversal concerning the district court's denial of severance on three grounds: (1) the lack of a limiting instruction to the jury, (2) the admissibility of evidence of Stark's prior felony conviction had severance been granted, and (3) the evidence of Stark's felony conviction presented to the jury. We discuss each argument individually.

### 1. Limiting instruction

While considering the proposed jury instructions, the district court dismissed the felon in possession of a firearm charge. The court found that the State had failed to prove that Stark's out of state conviction equated to a felony under Iowa law. Consequently, the jury was not instructed as to the felon in possession of a firearm charge. No specific limiting instruction concerning how the jury was to use the evidence of Stark's prior felony conviction was given to the jury. Stark notes that one of the factors in *Owens* that weighed against a finding of prejudice was the district court giving a "specific limiting instruction telling the jury it could only consider the stipulation [of defendant's felony] in relation to the felon-in-possession charge." 635 N.W.2d at 483. Stark asks this court to find error because "the district court did not give the jury an instruction that it could not consider Stark's felony conviction for any purpose since the court was not going to instruct the jury on the firearm charge."

However, Stark did not request the limiting jury instruction. "We have repeatedly held that timely objection to jury instructions in criminal prosecutions is necessary in order to preserve any error thereon for appellate review." *State v. Taggart*, 430 N.W.2d 423, 425 (Iowa 1988). To properly argue on appeal that the specific limiting instruction he now seeks should have been given, Stark was required to preserve such argument at trial.

*See State v. Fountain*, 786 N.W.2d 260, 262 (Iowa 2010) ("Normally, objections to giving or failing to give jury instructions are waived on direct appeal if not raised before counsel's closing arguments, and the instructions submitted to the jury become the law of the case."). Therefore, we find Stark's argument concerning a specific jury instruction for the use of prior felony conviction evidence unpreserved. *See State v. Taylor*, No. 17–0184, 2018 WL 739296, at *4 (Iowa Ct. App. Feb. 7, 2018) (finding no abuse of discretion in refusal to sever and agreeing with the State's argument that "[defendant] did not request the cautionary instruction and, therefore, cannot complain now that the instruction should have been given").

## 2. Admissibility of evidence for other purposes

In his brief, Stark analyzes whether evidence of his felony conviction would have been introduced for impeachment purposes under Iowa Rule of Evidence 5.609(a)(1)(B) (allowing for impeachment based on a prior felony conviction) had the burglary and robbery charges been tried separately. Stark asserts the evidence would have been excluded as the district court would have found its probative value was substantially outweighed by the risk of unfair prejudice. Stark argues because the evidence of Stark's prior felony conviction would not have been admissible for any other purpose, the district court abused its discretion in failing to sever the charges. In support of his argument, Stark points to *Elston*, 735 N.W.2d at 198−200.

If we limit Stark's argument to his individual case, it quickly becomes too speculative to be persuasive. Whether evidence of Stark's prior felony conviction would have come in for impeachment purposes is a question for the district court under a set of circumstances that do not exist, in a record that is not before us. Additionally, *Elston*'s

reasoning does not establish that for a court to find no good cause requires that the possibly prejudicial evidence be admissible for some other purpose. *Id.*

> The rules of joinder and the rules of evidence are distinct.
>
> [W]e have previously found that an attempt to equate our evidentiary rule's principles with rule 2.6(1)'s principles is inapposite.
>> "This evidentiary rule deals with what evidence is properly admissible to prove the crime charged. The joinder of offenses rule deals with the more basic question of what crimes can be charged and tried in a single proceeding. . . . 'The two rules deal with different questions, making the wholesale importation of the evidentiary rule into the law dealing with joinder of offenses inappropriate.'"

*Romer*, 832 N.W.2d at 183 (quoting *Lam*, 391 N.W.2d at 249). Further, this is the same type of per se argument compelling severance rejected in *Owens*. 635 N.W.2d at 482 (finding that joinder of a felon in possession charge does not, by its very nature, "inject unfairness into [the jury's] deliberations"). Instead, our supreme court found it is the district court's role to weigh the prejudice resulting from joinder against the State's interest in judicial economy. *Id.* The admissibility of the evidence supporting the prior felony conviction for other purposes does not deprive the district court of its discretion. *See Romer*, 832 N.W.2d at 182−83 (finding it immaterial that the contested evidence was admissible to support some but not all of defendant's charges and reiterating that evidentiary rules are distinct from the rules of joinder).

### 3. Evidence of felony conviction

Finally, Stark argues, "the jury received a substantial amount of details about Stark's felony conviction that the State attempted to use to support the felon in possession of a firearm charge that were not present in *Owens*." The evidence of Stark's felony conviction presented to the jury consisted of testimony from an employee of the Hancock

County (Illinois) clerk of court's office, a written guilty plea, and a sentencing order. Included in the sentencing order were the conditions of Stark's probation, which included provisions requiring Stark to "[v]iolate no criminal statute or traffic law of any jurisdiction," "[o]btain a [redacted] at a facility approved by Court Services . . . comply with all treatment recommendations" and "refrain from possessing a firearm or other dangerous weapon." Stark points to these provisions as sources of unfair prejudice, arguing that despite being partially redacted, a juror would infer Stark was "a substance user that the Illinois court had ordered to treatment" and "that if it was necessary for a judge to order Stark not to possess weapons, he must frequently possess them." Additionally, Stark argues that the guilty plea that denotes the nature of the charge Stark pled guilty to as a "class 3 felony" and included the range of potential punishment for the charge likely led the jury to infer "that the felony crime was a serious one."

Here, the district court took measures to ensure the evidence was inherent to a felony conviction, a necessary element the State had to prove. This potential prejudice is permissible so long as it is not outweighed by the State's interest in judicial economy. *Owens*, 635 N.W.2d at 482. In pretrial hearings, discussions took place on the introduction of evidence of Stark's prior felony conviction while limiting its prejudicial effect. The underlying nature of the felony was never disclosed to the jury. The specific felony, as well as other potentially prejudicial terms, were redacted from the evidence submitted to the jury. Additionally, on cross-examination of the employee from the Hancock County clerk of court's office, Stark was able to highlight for the jury a portion of his probation order that found imprisonment was not necessary for the protection of the public.

### 4. Conclusion – weighing prejudice and judicial economy

Having reviewed the district court decision and Stark's arguments on appeal, we find no abuse of discretion in the district court's denial of Stark's motion to sever. The joinder rule presumes that multiple charges be tried together. Iowa R. Crim. P. 2.6(1). The State had a strong interest in trying the charges together in one trial. To prove the charges separately would require proving many of the same facts with the same evidence. *See Owens*, 635 N.W.2d at 483 (finding an increased interest in judicial economy where defendant's charges involved proof that he was in possession of a firearm and noting severance would have required the State "to reintroduce, for a second jury, identical evidence"); *Romer*, 832 N.W.2d 169 at 183 ("A single trial was in the interest of judicial economy as it was then unnecessary to require numerous witnesses to testify at multiple trials to the same operative facts.").

It is the defendant's burden to prove good cause; there is no per se rule requiring severance. *Owens*, 635 N.W.2d at 483. The district court heard and considered Stark's arguments for prejudice and found Stark had not met his burden. The district court took appropriate measures to limit the prejudicial effect of the evidence of Stark's prior felony conviction. We reject Stark's argument concerning whether the evidence may or may not have been admitted for other purposes as immaterial to the district court's decision, and conclude Stark failed to preserve error concerning the jury instruction after the felon in possession charge was dismissed. Therefore, we find no abuse of discretion in the district court denying Stark's motion to sever.

**B.** **Admission of Evidence**

Next, Stark argues the district court abused its discretion when it admitted State's exhibits 15, 16, 38, and 40. At trial, Stark objected to the admission of the exhibits on relevancy and unfair prejudice grounds. We review the court's evidentiary rulings for abuse of discretion. *State v. Wilson*, 878 N.W.2d 203, 210 (Iowa 2016). A district court abuses its discretion when its decision rests on grounds or on reasons clearly untenable or to an extent clearly unreasonable. *Id.* There will be no abuse of discretion found unless a party has suffered prejudice. *Hall v. Jennie Edmundson Memorial Hosp.*, 812 N.W.2d 681, 685 (Iowa 2012). The district court is given broad discretion in evidentiary matters, and we will only disturb its rulings upon a showing of abuse. *Id.*

The rules of evidence favor the admissibility of relevant evidence. *See Williams v. Hedican*, 561 N.W.2d 817, 832 (Iowa 1997) ("Rule [5.403] allows the trier of fact to exclude *relevant* evidence. Because it does so, courts should apply the rule sparingly."). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and [t]he fact is of consequence in determining the action." Iowa R. Evid. 5.401. A district court judge has the discretion to exclude otherwise relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Iowa R. Evid. 5.403. "A determination of the probative value of relevant evidence focuses on the strength and force of the tendency of the evidence 'to make a consequential fact more or less probable.'" *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000) (quoting *McClure v. Walgreen Co.*, 613 N.W.2d 225, 235 (Iowa 2000)). "Unfair prejudice arises when the evidence prompts the jury to make a decision on an improper basis." *Id.*

## 1.     State's exhibit 15

The State was required to prove Stark possessed a dangerous weapon on both the burglary in the first degree and robbery in the first degree charges.  Stark denied having a gun, knife, or baton at the hotel on the night in question.  At trial, Godwin described the knife allegedly used by Stark as "a hunting knife.  It had a long blade, maybe five, six inches.  And I recall I believe it was serration on, you know, on the top."  State's exhibit 15 is a photograph depicting at least six knives.[3]  The photograph was obtained through a search warrant for Stark's Facebook Messenger.[4]  The warrant sought messages, including sent and received photographs, from November 2018 to May 2019, roughly five months before and two months after the day in question.  The photographs obtained pursuant to the search warrant were returned with no accompanying

---

[3] The knives appear to be laid out for display on a table, which is covered by a white towel.  The photo is taken from directly above the knives.  The frame of the picture makes it such that many of the knives are partially cropped out.  Six knives are substantially visible.  The first knife has a distinctive ornamental handle in the shape of a dragon and a blade embossed with yellow flames.  The second knife may be fairly characterized as a typical hunting knife with a dark, slightly curved handle and silver blade with no serrations.  The third knife is similar in appearance to the second; however, the blade has serrations on the bottom.  The fourth knife may be characterized as a hunting knife or large steak knife with a wooden handle and a blade with no serrations.  The fifth knife has a rounded wood handle and a slightly rounded blade with no serrations.  View of the sixth knife is obstructed, but a dark blade with no serrations is visible.  Additionally, the handles of what appears to be two more knives are visible in the photograph.  We note that the photograph offers no definitive means of determining the various lengths of the knives.

[4] The Iowa Supreme Court has stated:

> Facebook Messenger is a mobile tool that allows users to instantly send chat messages to friends on Facebook.  Facebook users can receive these messages via their computer or any other mobile or electronic device when they are logged onto their Facebook accounts.  Essentially, Facebook Messenger operates the same way mobile texting does, as only the persons sending and receiving the messages can view them and partake in the conversation.

*State v. Wickes*, 910 N.W.2d 554, 559 n.1 (Iowa 2018) (internal citations and quotations omitted).

information; all that the requesting party receives is the image. The receiving party cannot determine when the photographs were taken, by whom, or whether the photograph was sent or received. Godwin was never shown the photograph or asked whether Stark used any of the knives depicted.

For the district court to admit evidence properly, it must first find it relevant. In finding the evidence relevant and admitting the photograph, the court stated, "And No. 15, I'm going to admit that. There's at least one knife shown there that appears to be a hunting knife that has a serrated edge, which is consistent with the testimony of the victim, Mr. Godwin." In support of the district court's relevancy determination, the State points to this court's recent ruling in *State v. Brown*, No. 18–1988, 2020 WL 1879686 (Iowa Ct. App. Apr. 15, 2020). In *Brown*, the gun used in the alleged crime was never recovered; however, two witnesses provided descriptions of the weapon. 2020 WL 1879686, at *2. We upheld the admission of a photograph of the defendant holding a gun that looked similar to the one the witnesses described. *Id.* at *6. In finding the evidence relevant, we stated, "[t]he photographs were taken just two weeks before the robbery and tend to show Brown had access to a gun that looked very similar, even if it was not an exact match, to the gun used in the robbery." *Id.* Additionally, we noted that the discrepancies between the witness's description and the gun in the photograph "goes to the weight the jury should assign to the evidence, not whether it is admissible." *Id.*

On appeal, Stark asserts the distinguishing facts of his case make the relevancy analysis in *Brown* unpersuasive. Stark argues the applicable time period of the Facebook Messenger search warrant and the fact Stark does not appear in the photograph makes the evidence irrelevant. We disagree. While these distinguishing factors may lessen the

degree of the evidence's relevancy, we believe the evidence is still relevant. Whether Stark had a knife during his encounter with Godwin was a fact of consequence in the case. The photograph was obtained through a search warrant of Stark's Facebook Messenger with a temporal limitation. The parties do not dispute that the photograph contains at least one knife that fits Godwin's description. That Stark had a photograph stored on his Facebook Messenger of a knife matching Godwin's description from November 2018 to May 2019 has some tendency to make it more probable that Stark possessed such a knife on the day in question. This is sufficient to make the evidence relevant. *See* Iowa R. Evid. 5.401.

The district court may exclude relevant evidence if it finds its potential risk of unfair prejudice substantially outweighs the evidence's probative value. Iowa R. Evid. 5.403. Here, the photograph has some marginal probative value. Similar to the relevancy analysis, the fact that Stark had a photograph of knives, one of which matched the description of Godwin, on his Facebook Messenger during the relevant time period tends to make it more likely Stark possessed or had access to a knife matching Godwin's description on the day in question and tends to support Godwin's testimony. However, this probative value is weakened by the fact that Godwin never identified any of the knives in the photograph as the one used by Stark and the limitations of the Facebook Messenger search warrant.[5]

---

[5] When questioned at trial, the State could not say when the photograph was taken or by whom. The State could not say specifically when the photograph was sent or received within the prescribed time period. All that could be said definitively is that the photograph was stored on Stark's Facebook Messenger within the time period sought by the search warrant.

Relying on language from *State v. Slauson*, Stark argues that the weakened probative value of the evidence makes it "too remote or collateral to be accepted as proof of the fact in question." 88 N.W.2d 806, 809 (Iowa 1958). We disagree. *Slauson* establishes that it is was within the district court's discretion to exclude a gun that was "of the same size and type" described by the victim in the case but was otherwise in no way connected to the defendant. *Id.* In reviewing the district court's decision, the Iowa Supreme Court found the gun was "in the realm of marginal relevancy" because it matched the victim's description. *Id.* However, it was not an abuse of discretion to exclude the offered gun because it lacked any connection to the defendant stating, "While it may have been of some value to test the perception of the witness as to the object in the robber's hand, it was *perhaps* too remote or collateral to be accepted as proof of the fact in question." *Id.* at 809–10 (emphasis added).

State's exhibit 15 has greater probative value than that of the gun in *Slauson*. In both cases, the offered evidence contained a weapon matching the victim's description. However, unlike the gun in *Slauson*, which had no connection to the defendant, State's exhibit 15 is a photograph received pursuant to a search warrant for Stark's Facebook Messenger. While this probative value is diminished by the search warrant's limitations and the fact that Godwin never identified the knives, we do not believe this makes it incapable of being accepted as proof.

The probative value of the evidence must, however, be weighed against the risk of unfair prejudice. Exhibit 15 depicts multiple knives, only one of which fits Godwin's description. One knife has a serrated blade. Two of the knives would likely not be described as a hunting knife. The photograph connects Stark to knives that are not

relevant to the case. The knives are laid out for what appears to be display purposes and are not held or presented in any particularly threatening or inflammatory manner.

Of the four exhibits, we find this to be the closest call. However, we cannot say that the district court acted in a manner clearly untenable or to an extent clearly unreasonable in finding the risk of unfair prejudice not substantially outweighed by the evidence's probative value. The district court heard arguments from both parties, and the record establishes the district court considered the appropriate factors when ruling. Stark's trial counsel highlighted the weakened probative value presented by the search warrant and lack of specific identification by Godwin to the jury.[6] *See State v. Blair*, 347 N.W.2d 416, 420 (Iowa 1984) ("[T]he jury is at liberty to . . . give such weight to the evidence as in its judgment the evidence was entitled to receive. The very function of the jury is to sort out the evidence presented and place credibility where it belongs." (citations omitted)). We find no abuse of discretion in the district court's decision to admit State's exhibit 15.

### 2. State's exhibit 16

State's exhibit 16 is a photograph of a silver revolver-style gun with a long barrel held out in the palm of a hand. The photograph was obtained through the same Facebook Messenger search warrant as State's exhibit 15. At trial, Godwin described the gun allegedly used by Stark as "stainless steel, either that or chrome. It was a large-caliber revolver." Additionally, Godwin testified that he "asked [Stark] if [the gun] was a .357 magnum." To which Stark allegedly replied, "it was a Colt .45." In his testimony, Godwin

---

[6] On cross-examination of many of the State's witnesses, Stark's trial counsel elicited testimony that made clear the limitations of the Facebook Messenger search warrant and the fact Godwin had not been shown the photograph.

went on to say, "however, [the gun] wasn't a 1991 which is typically referred to as a Colt .45."

In ruling on the admissibility of State's exhibit 16, the district court cited *State v. Poffenbarger*, 87 N.W.2d 441 (Iowa 1958), and admitted the evidence stating, "that gun generally meets the description given by Mr. Godwin. It's silver, a longer barrel handgun. The court's not very familiar with firearms. There's no evidence about whether it's a Colt .45 or a .357, or whatever, but the court is going to admit that under the *Poffenbarger* case." On appeal, Stark argues the district court's reliance on *Poffenbarger* was misplaced and distinguishes the case based on "the strength of the evidence connecting the respective defendants to the respective weapons." In *Poffenbarger*, the Iowa Supreme Court found a sufficient connection between the defendant and the alleged crime to justify admission of weapons found near the scene of arrest. 87 N.W.2d 441 at 443. The weapons were found in a bag along the road where the defendant had first encountered police before attempting to evade them. *Id.* Stark distinguishes *Poffenbarger* by pointing out that in his case, the gun allegedly used was never found, and the connection between himself and the photograph of the gun is weakened by limitations of the Facebook Messenger search warrant. Stark states, "[a]t most, the gun in exhibit 16 matched the general description Godwin gave of the gun Stark allegedly used."

In *Poffenbarger*, the court reiterated the general principle that "[t]o warrant the admission in evidence of an instrument or weapon as the one with which the crime was committed, a prima facie showing of identity and connection with the crime is necessary and sufficient; clear, certain, and positive proof is generally not required." *Id.* at 443

(quoting 22 C.J.S. Criminal Law § 712). We believe that showing is met here. The gun depicted matches Godwin's description and it was stored on Stark's Facebook Messenger during the relevant time. The circumstances presented are similar to those in *Brown*, where we recently upheld the admission of a photograph taken two weeks before the alleged crime in which the defendant is holding a gun generally matching witnesses' descriptions. 2020 WL 1879686 at *6.

The photograph is relevant in that it tends to make it more likely that Stark possessed or had access to a gun matching Godwin's description on the day in question. The probative value of such evidence tends to make it more likely that Stark possessed a gun matching Godwin's description making Godwin's testimony more credible. The manner in which the gun is depicted does not create any greater prejudice than that which naturally arises from a photograph of a gun. We do not find the risk of unfair prejudice substantially outweighed the evidence's probative value. We find no abuse of discretion in the district court's discretion to admit State's exhibit 16.

### 3. State's exhibit 38 and 40

State's Exhibits 38 and 40 are photographs taken by Detective Andrew Whitaker of the Keokuk Police Department of two separate knives found in a vehicle connected to Stark. On May 9, 2019, Deputy Bryson Hennigar of the Lee County Sheriff's Office observed Stark driving a black Pontiac. Later that day, the vehicle was found crashed in a ditch, abandoned.[7] The police obtained a search warrant to search the car, and Detective Whitaker executed the search. In the vehicle, he found mail with a return

---

[7] The car was registered to Ellen Frank. The record is unclear on how Frank is connected to Stark or S.N.

address to S.N., S.N.'s temporary driver's license, a money order receipt that indicated

Stark as the receiving party, an envelope addressed to Stark, cash, and the two knives.

State's exhibit 38 depicts a knife with a black handle and silver blade with no

serrations, described by Detective Whitaker as a "fixed blade buck knife." State's

exhibit 40 is a photograph of a knife with a tan, grooved rounded handle and silver blade

with serrations on the bottom, described by Detective Whitaker as a fixed blade "Ka-BAR"

knife.[8] Detective Whitaker testified that he documented the knives because he believed

they matched the description given by Godwin. Whitaker also noted that he did not show

Godwin the photographs or the knives.

In admitting the evidence over Stark's objections, the district court reasoned as

follows:

> I think there are arguments both ways, but because the knives weren't—they were seized some forty-five days after the events that we're here to talk about in this case, the car they were found in wasn't registered to the Defendant, the knives have not been identified by Godwin as being involved in the alleged robbery. But those are all facts and arguments, [defense counsel], that you can make, and perhaps very persuasively to the jury.
> I think offsetting those arguments, according to my notes, Mr. Godwin testified that the knife that he observed was 5 to 6 inches long, it was a hunting knife, and the knife may have had serrated edges. The knife shown in Exhibit 40 appears to have a serrated lower blade, edge. There isn't any evidence in the record as to the length of the blade of either of the knives in 38 or 40, but these aren't little pocket knives that would have like a 1-inch blade. Both knives are longer in length, and I think they're relevant. It will be up to the jury to determine whether these were the knives—or the knife that was used—allegedly used in the alleged robbery and burglary.

---

[8] A "Ka-BAR knife" is a popularized term used to refer to combat or military-style knives issued by the United States Marine Corps. See *State v. DeCiccio*, 105 A.3d 165, 193 (2014) (describing the "military issued" "Ka–Bar fighting knife" as having "common stabbing oriented features such as relatively long blades tapered to a sharp point, multiple edges, a handle with a hilt to protect the user's hand during thrusting, and thick grips.").

We agree with the district court's reasoning. The evidence is relevant in that the knives generally match the description given by Godwin. That the knives were found in a vehicle driven by Stark roughly a month and a half after the day in question tends to make it more probable that Stark possessed such a knife when he confronted Godwin. The knives are not depicted in any particular manner likely to inflame the jury. We cannot say that risk of unfair prejudice in admitting the evidence substantially outweighed its probative value. Accordingly, we find the district court acted within its discretion when admitting State's exhibits 38 and 40.

## III.  Harmless Error

Even if we were to conclude one or more of the four contested exhibits should have been excluded, Stark is unable to prove prejudice that would require a reversal based on other evidence in this record. Admission of evidence that should not have been admitted does not warrant reversal of a conviction unless it is prejudicial. *See State v. Henderson*, 696 N.W.2d 5, 10 (Iowa 2005). Prejudice occurs when it appears "that the rights of the complaining party have been injuriously affected by the error or that he has suffered a miscarriage of justice." *Id*. at 12 (quoting *State v. Sullivan*, 679 N.W.2d 19, 29 (Iowa 2004)). To show that the evidence was not prejudicial and that any error was harmless, we look to other evidence of Stark's guilt. *State v. Martin*, 704 N.W.2d 665, 673 (Iowa 2005).

In addition to evidence from fourteen State witnesses, including Godwin, the jury received evidence of Stark's text messages sent to associates in May 2019 that read as follows: "[M]an this is all over a dude trying to hook out [S.N.] for $200 so I set it up and went into the room instead of her and took his money made him piss his pants. . . ."

Stark also sent a text message to S.N.'s mother:

Fyi my robbery and burglary charge is from making an old gray haired man so terrified that he pissed his pants and pleaded for mercy while I took his money that he had brought specifically to pay [S.N.] for meeting him for sex . . . again.

. . . .

Because I narrowly avoided killing an old pervert motherfucker who called the cops after getting robbed while soliciting sex with [S.N.].

And while in custody waiting for trial on the instant charges, Stark used a jail computer to send the following email, asking the recipient to forward a message to Godwin in an effort to get Godwin not to appear for depositions:

[F]avor BIG favor to ask… plz  text greg at [ ] or call him tell him "skylers lawyer is going to send him a notice to come to depositions at the jail. theyll make it sound like greg will get in trouble if he doesnt show up but he WILL NOT get in trouble if he doesnt show up for depositions.  what will happen is they will dismiss my charges AND [ S . N . ]'s charges since i couldnt depose my witness. [ ] please mr. godwin ill be indebted to you for life.  im sorry i took your money.  Ill pay it back x100 if you do this, i do have the means to pay if too im not a street junky I had a major momentary lapse in judgement te day we met. pleas save me amd [S.N.]"

Lastly, when Stark was interviewed by law enforcement, he asked the officer, "who gets robbed paying for sex and calls the police?"  He repeated again to law enforcement that he asked people that question, "who pays for sex, gets robbed and calls the police?"

We conclude that even if the district court erred on admission of the exhibits in question, any error was harmless given the other evidence of Stark's guilt.  As a result, even if evidence from these exhibits was erroneously admitted, this court can be "certain the jury verdict would have been the same without the improperly admitted evidence." *See Wilson*, 878 N.W.2d at 219.

**IV.    Conclusion**

We find the district court did not abuse its discretion in finding the State's interest in judicial economy outweighed the risk of unfair prejudice arising from joinder and denying Stark's motion to sever.  Additionally, we find no abuse of discretion in the district court's admission of State's exhibits 15, 16, 38, and 40.  Finally, we conclude any error concerning admission of the four exhibits is harmless, given the other evidence supporting Stark's guilt.  Accordingly, we affirm.

**AFFIRMED**.